HARRIS, GDN., APPELLEE, *v.* MT. SINAI MEDICAL CENTER ET AL., APPELLANTS.

[Cite as *Harris v. Mt. Sinai Med. Ctr.,* 116
Ohio St.3d 139, 2007-Ohio-5587.]

(No. 2006–1247—Submitted May 23, 2007—Decided October 25, 2007.)

O'DONNELL, J.

{¶ 1} Mt. Sinai Medical Center, Ronald Jordan, M.D., and Northeast Ohio Neighborhood Health Services, Inc. ("Northeast") appeal from a decision of the Cuyahoga County Court of Appeals that reversed the trial court's order awarding them a new trial and remanded the cause to the trial court to consider motions for remittitur of damages and for prejudgment interest. The appeal resulted from a $30 million jury verdict arising out of claimed medical malpractice during the birth of Walter Hollins in 1987.

{¶ 2} The major focus of this appeal concerns the standard of review by an appellate court in considering a motion for new trial granted pursuant to Civ.R. 59. Because the appellate court here applied a correct standard but did so improperly, we are constrained to reverse that decision and reinstate the judgment of the trial court ordering a new trial.

{¶ 3} In 1998, Mark McLeod, Walter Hollins's guardian,[1] filed this action seeking damages from Mt. Sinai, Northeast, and Jordan, alleging negligence against Dr. Jordan, who delivered Walter by Cesarean section ("C-section"), and

---

1. While this case was pending in the court of appeals, McLeod was replaced as guardian by Regina Harris, who was formally substituted as a party by motion.

his employer, Northeast, and further alleging negligence against agents and employees of Mt. Sinai Hospital, where the birth occurred. Specifically, the complaint asserted that a delay in conducting the procedure resulted in Walter's mental retardation and other severe and permanent injuries. To the contrary, appellants maintained that intrauterine growth retardation, evidenced by fused joints, a grossly underweight placenta, and birth asphyxia, i.e., oxygen deprivation, precipitated Walter's condition.

{¶ 4} After a three-week trial, the jury returned a verdict in favor of McLeod for $30 million: $15 million in economic damages and $15 million in noneconomic damages.

{¶ 5} In response to the verdict, Mt. Sinai, Northeast, and Jordan moved alternatively for judgment notwithstanding the verdict or for a new trial, and Mt. Sinai moved in the alternative for remittitur. The trial court granted the motions for a new trial and denied the other motions as moot. In its written opinion, the trial court articulated several bases supporting its decision.

{¶ 6} The first of these grounds was an excessive verdict appearing to have been given under the influence of passion or prejudice. Civ.R. 59(A)(4). The court reviewed the economic- and noneconomic-damages awards, finding the economic-damages award excessive and the noneconomic-damages award to have been given under the influence of passion or prejudice.

{¶ 7} With regard to the economic-damages award, Dr. Harvey S. Rosen, McLeod's economic expert on the cost of health care during Walter's life expectancy, prepared a report in which he detailed that the potential cost of caring for Walter ranged between $4,390,992 and $6,501,443, and did not include any RN or LPN care. At trial, however, McLeod's counsel asked Rosen what the cost would be figuring in both RN and LPN care, despite the omission of any such evidence in Rosen's expert report. Appellants objected, but the trial court permitted Rosen to testify that such care would cost $13,042,026 for LPN care and $14,295,993 for RN care, a total that reflected more than double the highest estimate for all other expenses, including medical care, therapy, attendant care, housing, and transportation needs. Moreover, the trial court indicated that the evidence adduced at trial revealed the total cost of Walter's care for the previous 17 years to be $107,000. The court admitted that its ruling allowing Rosen to testify about these costs was error and that it violated Loc.R. 21.1(B) and cases interpreting that rule. It concluded that this evidence had a strong influence on the jury and that "there was no medical basis for this testimony."

{¶ 8} As to the noneconomic-damages award, the court noted that "[t]here was no evidence that Walter suffers regular, continuing pain," and it further stated that "when called upon to award non-economic damages, the jury simply matched the $15,000,000 it had already awarded for economic damages, as [appellee's

counsel] had essentially asked them to do." The court concluded that "[t]he award of $15,000,000 for non-economic damages in this case is so out-of-line and unjustified that it must have been the result of passion or prejudice."

{¶ 9} In addition to the excessive damages given under the influence of passion or prejudice, the trial court detailed the misconduct of McLeod's counsel. Civ.R. 59(A)(2). The court described counsel's conduct as "discourteous" and "theatrical," including "constant interruption of opposing counsel without bothering to object and obtain a ruling" so that he could "convey to the jury his own idea of what the witness should be saying, thus testifying for the witness, rather then [sic] making a genuine and valid objection to the question." These interruptions, for example, included statements such as "This is all made up," and "where did he come up with that, Judge?" and were asserted with no accompanying objection. This type of conduct became so prevalent that the trial judge admonished counsel during a conference outside the presence of the jury.

{¶ 10} Moreover, the trial court found that counsel intentionally and repeatedly mischaracterized testimony in an attempt to mislead or confuse the jury. Although not specified by the trial court, McLeod's counsel repeatedly confused the difference between a "stat" C-section procedure and an "emergency" C-section procedure, despite clarification by multiple witnesses and the court. As an attending nurse testified, "a stat C section is done immediately. Emergency means it's not scheduled." The terms had materially different meanings, and counsel repeatedly blurred this distinction in order to manipulate the jury into believing that Walter's "emergency" C-section was more urgent than that term actually implied.

{¶ 11} Also, counsel engaged in improper questioning of his own expert witness, Dr. Rosen. During the direct examination of Rosen, counsel asked Rosen to confirm that his economic cost figures did not reflect attorney fees for pursuing this action. Appellants objected to the question, and the court gave a curative instruction. But the trial judge, in the order granting a new trial, determined that the question "raised the matter of attorney fees in the minds of the jurors" and that the curative instruction did not remedy that effect.

{¶ 12} The trial court also found that counsel exceeded the bounds of zealous advocacy by accusing the witnesses for the defense of "prevarication" and making this a theme for his entire case despite having no evidence of a cover-up. The extent of this theme is evidenced by counsel's closing argument, in which he referred repeatedly to a spoliation-of-evidence claim that the trial court had previously dismissed via directed verdict. Counsel's closing argument ignored this ruling and referred to the alleged cover-up several times. Without any evidence supporting the claim that any of the appellants intentionally acted to

destroy evidence of negligence, counsel's statements bore no relevance to the case and appealed only to the jury's passion or prejudice.

{¶ 13} Counsel also injected race and economic status into his closing argument, emphasizing that Walter was a poor, black child, while the health-care providers were powerful, wealthy corporations and doctors. These considerations have no place in evidence during trial and have no purpose in final argument, as they are extraneous to the evidence and the law and are designed to inflame the prejudice of the jury.

{¶ 14} As additional grounds for awarding a new trial, the trial court found that its failure to permit voir dire of the jury panel regarding a front-page article published in the Cleveland Plain Dealer about the trial just prior to their deliberation prevented counsel from determining whether any juror should have been excused and constituted an irregularity in the proceeding. Civ.R. 59(A)(1). Instead of conducting or permitting a voir dire on the record, the trial court simply instructed the jury, off the record in the hallway outside of the courtroom, to disregard the article. Several jurors admitted to reading the article, and the trial court found, based on the contents of the article, that "some jurors may have found that the opportunity to return a record verdict in this County was irresistible."

{¶ 15} Following the trial court's order, McLeod filed a motion for relief from judgment pursuant to Civ.R. 60(B) and an affidavit seeking disqualification of the trial court judge. In response, the trial judge voluntarily recused himself from further proceedings.

{¶ 16} While the motion for relief from judgment remained pending in the trial court, McLeod filed a notice of appeal with the Cuyahoga County Court of Appeals. Mt. Sinai cross-appealed, maintaining that the trial court's order granting a new trial did not moot its motion for judgment notwithstanding the verdict ("JNOV"), because a favorable ruling on the JNOV would preclude the need for a new trial. The appellate court remanded the matter for a ruling on the motion for relief from judgment.

{¶ 17} Due to the trial judge's recusal, a different judge granted the motion for relief from judgment and reinstated the jury's original $30 million verdict. Mt. Sinai, Northeast, and Jordan appealed that judgment to the Cuyahoga County Court of Appeals.

{¶ 18} The appellate court consolidated McLeod's appeal challenging the trial court's order granting a new trial with Mt. Sinai's appeal from the order granting relief from judgment and Northeast and Jordan's appeal from the same order. The other matters before the court of appeals were Mt. Sinai's cross-appeal of the trial court's denial of its motion for JNOV regarding the application of agency by

estoppel and McLeod's appeal from the trial court's order directing a verdict on the spoliation-of-evidence claim.

{¶ 19} The appellate court first determined the motion for relief from judgment to be an improper attempt at an appeal, and it therefore held it to be a nullity. *McLeod v. Mt. Sinai Med. Ctr.*, 166 Ohio App.3d 647, 2006-Ohio-2206, 852 N.E.2d 1235, ¶ 16. It further affirmed the trial court's denial of Mt. Sinai's motions for directed verdict and JNOV, and it affirmed the directed verdict regarding McLeod's spoliation claim. Id. at ¶ 50 and 55. Finally, it reversed the trial court order granting a new trial and remanded the matter for consideration of the motion for remittitur of damages. The court held that the trial court had abused its discretion in awarding a new trial, reasoning that "so long as the verdict is supported by substantial competent credible evidence, the jury verdict is presumed to be correct and the trial court must refrain from granting a new trial." Id. at ¶ 28. One member of the court of appeals panel filed a separate opinion dissenting in part, urging that the trial court had a reasonable basis to award a new trial on the grounds of counsel's misconduct and the excessive verdict given under the influence of passion or prejudice.

{¶ 20} We accepted the discretionary appeal of Mt. Sinai, Northeast, and Dr. Jordan with respect to the narrow issue regarding appellate review of an order granting a motion for new trial. We will further address Mt. Sinai's argument regarding the application of agency by estoppel.

## Grounds for New Trial

{¶ 21} Mt. Sinai, Northeast, and Dr. Jordan argue that the appellate court employed an incorrect standard of review because, in their view, the weight and competency of the evidence supporting a verdict are irrelevant when considering whether a trial court abused its discretion in ordering a new trial. McLeod contends that the appellate court used the correct standard and that the evidence supports the jury verdict regardless of his counsel's conduct, the size of the damages award, or any trial irregularities.

{¶ 22} Civ.R. 59(A), which establishes the grounds for a new trial, provides:

{¶ 23} "(A) A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

{¶ 24} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

{¶ 25} "(2) Misconduct of the jury or prevailing party;

{¶ 26} "(3) Accident or surprise which ordinary prudence could not have guarded against;

{¶ 27} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

{¶ 28} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

{¶ 29} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

{¶ 30} "(7) The judgment is contrary to law;

{¶ 31} "(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

{¶ 32} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

{¶ 33} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.

{¶ 34} "When a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted."

{¶ 35} This court has previously held that "[w]here a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court." *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus. An abuse of discretion " 'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 36} Here, Mt. Sinai, Northeast, and Dr. Jordan asserted that the jury verdict was excessive and given under the influence of passion or prejudice pursuant to Civ.R. 59(A)(4), and, in conformity with Civ.R. 59(A)(2), that misconduct by McLeod's counsel tainted the verdict. The important consideration for trial judges considering a motion on either of these bases is the evidence *establishing grounds for a new trial,* not the evidence supporting the jury's verdict. Thus, where competent, credible evidence exists to support the trial court's finding of an excessive verdict given under passion or prejudice or misconduct of counsel, the order granting a new trial is not an abuse of discretion and should remain undisturbed. As we stated in *Pesek v. Univ. Neurologists Assn., Inc.* (2000), 87 Ohio St.3d 495, 721 N.E.2d 1011, "if 'there is room for doubt whether the verdict was rendered upon the evidence, or may have been influenced by improper remarks of counsel, that doubt should be resolved in favor of the defeated party.' " *Id.* at 502, 721 N.E.2d 1011, quoting *Warder, Bushnell &*

*Glessner Co. v. Jacobs* (1898), 58 Ohio St. 77, 85, 50 N.E. 97. In situations such as this one, appellate courts should defer to trial judges, who witnessed the trial firsthand and relied upon more than a cold record to justify a decision. *Mannion v. Sandel* (2001), 91 Ohio St.3d 318, 322, 744 N.E.2d 759.

{¶ 37} In ordering a new trial, the court admitted error in permitting Rosen to testify as to the costs of providing RN or LPN care for Walter, which went beyond his report. This resulted in testimony of economic damages more than twice the amount contained in Rosen's written report, which the jury apparently relied on when considering noneconomic damages. Thus, competent, credible evidence supports the trial court's decision to award a new trial on this basis.

{¶ 38} Competent, credible evidence, as illustrated above, also supports the granting of a new trial on the basis of misconduct of a prevailing party. Civ.R. 59(A)(2) applies to both a party and to counsel. See *Stephens v. Vick Express, Inc.*, Butler App. Nos. CA2002–03–066 and CA2002–03–074, 2003-Ohio-1611, 2003 WL 1689602, ¶ 31. As the court in *Stephens* noted, "The determination of whether alleged misconduct of counsel was sufficient to taint the verdict with passion or prejudice ordinarily lies within the sound discretion of the trial court." Id., citing *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 459 N.E.2d 1315. In exercising this discretion, trial courts have a " 'duty in the executive control of the trial to see that counsel do not create an atmosphere which is surcharged with passion or prejudice and in which the fair and impartial administration of justice cannot be accomplished.' " *Pesek*, 87 Ohio St.3d at 501, 721 N.E.2d 1011, quoting *Jones v. Macedonia–Northfield Banking Co.* (1937), 132 Ohio St. 341, 351, 8 O.O. 108, 7 N.E.2d 544. This duty includes ordering a new trial when misconduct of counsel affected the outcome, and we find sufficient evidence to support the trial court's decision in that regard.

{¶ 39} Having established these grounds, we turn to the appellate court's decision to remand the case for a remittitur of damages. In *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 444, 715 N.E.2d 546, we indicated the factors that a trial court must find before ordering a remittitur: "(1) unliquidated damages are assessed by a jury, (2) *the verdict is not influenced by passion or prejudice*, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages." (Emphasis added.) According to the trial court's order granting a new trial, counsel's conduct represented an "effort[ ] to appeal to the jury's natural sympathy through passion and prejudice." In addition, the trial court admitted its error regarding Dr. Rosen's testimony, which finds no support in his pretrial report. Both the improper expert testimony and the alleged misconduct functioned to taint more than just the amount of the verdict; indeed, they tainted the jury's finding of liability itself. Therefore, a remittitur would not be a proper remedy pursuant to *Wightman*.

{¶ 40} In this case, then, competent, credible evidence supports the trial court's decision to award a new trial, and the trial court did not abuse its discretion in making such an order. And because the case involves a verdict given under the influence of passion or prejudice and tainted by misconduct of counsel, remittitur is not the proper remedy. *Dardinger v. Anthem Blue Cross & Blue Shield,* 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, ¶ 184–185.

### Agency By Estoppel

{¶ 41} Mt. Sinai further argues that the trial court erred by denying its motion for JNOV regarding the application of agency by estoppel. Specifically, the hospital urges that the trial court should have precluded evidence as to any possible negligence on the part of anesthesiologist Dr. Bechara Hatoum because McLeod did not join him as a party, and it relies on our decision in *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, in support.

{¶ 42} Walter's guardian maintains that *Comer* does not apply, because the jury never found any negligence on the part of Dr. Hatoum, thus mooting any question of agency by estoppel.

{¶ 43} In *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, syllabus, this court held that "[a] hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care."

{¶ 44} We limited the application of *Clark* in *Comer,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 28, where we held that "agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician. Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent contractor physician has expired." Reasoning that "a direct claim against a hospital premised solely upon the negligence of an agent who cannot be found liable" would be contrary to basic agency principles, id. at ¶ 25, *Comer* precluded application of the agency-by-estoppel doctrine in cases where the agent's potential liability had been extinguished *by operation of law.*

{¶ 45} In this instance, McLeod failed to join Hatoum as a party to the action, but this failure does not render the doctrine of agency by estoppel inapplicable. As the court of appeals notes, the doctrine can also apply based upon the allegedly negligent actions of the nurses attending Walter's birth. Because there is substantial competent evidence to support the party against whom the motion for JNOV was made (i.e., McLeod), upon which evidence reasonable minds might

reach different conclusions, *Estate of Cowling v. Estate of Cowling,* 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 31, the trial court did not err in denying this motion. Any questions regarding the admissibility of evidence establishing Dr. Hatoum's alleged negligence are properly left to the trial court on remand of this matter.

## Conclusion

{¶ 46} When in the exercise of discretion a trial court decides to grant a new trial and that decision is supported by competent, credible evidence, a reviewing court must defer to the trial court. In such a case, the reviewing court may not independently assess whether the verdict was supported by the evidence, because the issue is not whether the verdict is supported by competent, credible evidence, but rather whether the court's decision to grant the new trial is supported by competent, credible evidence. And in this instance, a remittitur of damages is not the proper remedy, because the verdict was given under the influence of passion or prejudice and tainted by misconduct of counsel. Therefore, a new trial must be ordered.

{¶ 47} We therefore reverse the judgment of the court of appeals and reinstate the trial court's order granting a new trial; however, we affirm the appellate court with respect to its ruling regarding the application of agency by estoppel.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 48} I dissent because I agree with the appellate court's determination that a retrial is not appropriate in this case but that a remittitur is appropriate. The jury's finding on damages, not on liability, is the only issue here. The excessiveness of the jury's verdict on economic damages resulted not from passion and prejudice but from unsupported testimony from one of the appellee's experts as to the cost of nursing care. To order a retrial because of the obnoxious behavior of an attorney does our system of justice no favors—such behavior must be dealt with as it occurs, not after a judge decides that a party may have benefited from it. Such a reversal does not reflect the effective administration of justice.

{¶ 49} Since all the parties in this case, which was filed nearly a decade ago, deserve a resolution, and because the power to order a remittitur is not limited to trial courts, *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 627 N.E.2d 986, this court should order a $20 million remittitur in this case, reducing the jury verdict to $10

148

million. That amount has a more realistic connection to the evidence as to economic damages—the $6.5 million testified to by the plaintiff's expert for the cost of Walter's care plan—than did the jury's verdict. Should the plaintiff refuse the remittitur, he would be entitled to a new trial. Before that trial, it would be wise for the trial judge to deny any motion for admission pro hac vice filed on behalf of Mr. Fieger.

---

Beam & Raymond Associates and Jack Beam, for appellee.

Tucker, Ellis & West L.L.P., and Irene C. Keyse–Walker; and Reminger & Reminger Co., L.P.A., Marc W. Groedel, and Marilena DiSilvio, for appellant Mt. Sinai Medical Center.

Jones Day, Mark Herrmann, and Pearson N. Bownas; and Sutter, O'Connell & Farchione, Joseph A. Farchione Jr., and Thomas H. Terry III, for appellants Ronald Jordan, M.D., and Northeast Ohio Neighborhood Health Services, Inc.

Bricker & Eckler, L.L.P., Catherine Ballard, Anne Marie Sferra, and Bobbie S. Sprader, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, and American Medical Association.

Kegler, Brown, Hill & Ritter, L.P.A., and Loriann E. Fuhrer, urging reversal for amicus curiae Ohio Association of Community Health Centers.

Wood & Berliner, P.L.L.C., Brett M. Wood, and Deborah E. Berliner, urging affirmance for amicus curiae Life Legal Defense Foundation.