[Cite as *Fennell v. Columbiana*, 2010-Ohio-4242.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BETTY FENNELL, ADMINISTRATRIX OF THE ESTATE OF LISA SMITH, DECEASED, | ) ) ) | |
| | ) | CASE NO.    09 CO 42 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| CITY OF COLUMBIANA, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                                         Case No. 07CV970.

JUDGMENT:                                          Affirmed.

APPEARANCES:
For Plaintiff-Appellant:                          Attorney Ilan Wexler
                                                         21 North Wickliffe Circle
                                                         Youngstown, Ohio  44515

For Defendants-Appellees:                    Attorney Craig Pelini
                                                         Attorney Randall Traub
                                                         8040 Cleveland Avenue, NW, Suite 400
                                                         North Canton, Ohio  44720

                                                         Attorney David Barbee
                                                         11 South Main Street
                                                         Columbiana, Ohio  44408
                                                         (For Fred Winters)

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                                         Dated:  September 7, 2010

VUKOVICH, P.J.

¶{1} Plaintiff-appellant, Estate of Lisa Smith, appeals the decision of the Columbiana County Common Pleas Court, which refused to grant a new trial after judgment was entered in favor of defendants-appellees the City of Columbiana and two of its employees. Appellant raises issues concerning defense counsel's cross-examination of plaintiff's expert on his fees for a discovery deposition and on the expert's failure to supply defense counsel with the citations to cases in which he had previously testified. Appellant then argues that the defense expert changed his opinion without providing notice to plaintiff. Appellant also contends that defense counsel insinuated that lightning could have been the cause of death and alleges that this violated an agreement made in response to plaintiff's motion in limine. For the following reasons, the judgment of the trial court is affirmed.

<u>STATEMENT OF THE CASE</u>

¶{2} The City of Columbiana owns and operates power lines within its limits. In the early morning hours of May 22, 2004, during a strong storm with heavy wind and much lightning, city employees, Gary Holloway and James Sturgeon, were called to work due to power outages. They found a transformer that was not receiving power. Since the fuse was intact and they had been informed about a flash further down the line, they proceeded down the flooded street. Between the next two poles, they discovered a downed power line resting in deep water.

¶{3} Although they treat every wire as live, they did not believe this wire had power due to the outage problems, noting that they stood in the water as they worked on the line. Mr. Holloway testified that this opinion was confirmed later when they discovered that a fuse was blown at the transformer that would have fed this line. (Tr. 31).

¶{4} Mr. Holloway hooked the end of the downed wire to a block and tackle device with tension grips (said to be similar to a Chinese finger grip). Mr. Sturgeon took the device thirty-five feet up the pole in a boom and hooked the other grip on the device onto wire exiting an insulator on the pole. Instead of immediately completing the wire connection and removing the block and tackle device, they retreated to the city's garage due to the severity of the lightning and so Mr. Sturgeon could change into

rubber safety boots. Mr. Holloway testified that they left the line tight and secure and that there was no way this set up would come apart. (Tr. 20, 24).

¶{5} They returned to the pole after fifteen minutes to find the line down in water again. Also in the water was the body of Lisa Smith, who had been delivering newspapers. The coroner concluded that she had been electrocuted.

¶{6} On September 25, 2007, Betty Lou Fennel, as the administratrix of the estate of Lisa Smith, filed a complaint against the City of Columbiana and its two employees. It was argued that the city was liable for negligence due to the proprietary function of operating a utility and the employees were liable for acting recklessly or wantonly.

¶{7} The case was tried to a jury. The jury was shown the insulator, which had been in normal condition when the employees hung the line but which was found thereafter to be broken and scorched. (Tr. 36-37). The city opined that the line fell again because it had been struck by lightning near the insulator. (Tr. 32).

¶{8} Plaintiff's expert opined that the damage to the insulator and the line falling was likely caused by the wind causing the unconnected wires to touch somewhere they should not have. (Tr. 91). Mr. Holloway, however, stated that wires could not have blown around due to the grip system which was still in place after the line fell again.

¶{9} On June 18, 2006, the jury returned a unanimous verdict in favor of the defendants. In a special interrogatory, the jury found that the defendants were not negligent. The court entered judgment for the defendants on June 25, 2009.

¶{10} On July 9, 2009, appellant filed a timely motion for a new trial based upon allegations of misconduct of defense counsel, surprise, and newly discovered evidence. On November 5, 2009, the trial court denied this motion. Appellant filed a timely appeal in this court only raising the issues presented in the new trial motion.

ASSIGNMENT OF ERROR & STANDARD OF REVIEW

¶{11} Appellant sets forth the following assignment of error:

¶{12} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL."

¶{13} As appellant states, the denial of the new trial motion is reviewed for an abuse of discretion. See *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-

5587, ¶35. Thus, we cannot overrule the denial of a new trial unless the trial court's decision was unreasonable, arbitrary, or unconscionable. Id. In determining whether the grounds raised deprived the movant of a fair trial or whether they are true, appellate courts are instructed to defer to trial judges as they personally witnessed the trial whereas the appellate court views merely a cold record. Id. at ¶36.

¶{14} In support of the argument that a new trial was warranted here, appellant raises the Civ.R. 59(A) grounds of misconduct of the prevailing party, surprise, and newly discovered evidence. Specifically, appellant presents arguments which deal with three main issues: the cross-examination of plaintiff's expert by defense counsel; the opinion of the defense's expert and whether a change of opinion resulted in prejudicial surprise to plaintiff's counsel; and whether defense counsel violated an agreement to refrain from making insinuations regarding the role of lightning in the death. See Civ.R. 59(A)(2), (3), and (8). We shall address these issues individually.

<u>CROSS-EXAMINATION OF PLAINTIFF'S EXPERT</u>

¶{15} Appellant raises two problems with defense counsel's questioning of plaintiff's expert witness. Appellant believes that defense counsel improperly impugned the expert's credibility by eliciting testimony that the expert promised defense counsel at deposition that he would provide the defense with a list of prior cases in which the expert testified but then never provided defense counsel with this list. The expert admitted that he said at deposition while under oath that he would provide the information. (Tr. 34-36). The expert then stated that after deposition, plaintiff's counsel told him that since the defense did not thereafter press the issue, the expert should not provide the information. (Tr. 35, 37).

¶{16} Appellant contends that since the defense did not file a formal request, the defense should be prohibited from mentioning this broken deposition promise at trial. Appellant characterizes this questioning as falling under Civ.R. 59(A)(2), which entails misconduct of the prevailing party.

¶{17} However, there is no indication of misconduct. The questioning was relevant. It was not improper to insinuate that the expert may have had something to hide by not providing the prior cases in which he testified. As the expert admitted, he promised to provide the information when he returned to his office.

**¶{18}** The fact that the defense never filed a request was also relevant in order to help provide an explanation as to why the expert broke his promise, and the jury heard this excuse. The jury could properly weigh the expert's credibility on this matter.

**¶{19}** Even if the questioning had been improper due to the failure to formally request the information, counsel's conduct cannot be said to have tainted the verdict with passion or prejudice. See *Harris*, 116 Ohio St.3d 139 at ¶38. In any event, appellant did not object to this line of questioning below. Rather, appellant allowed defense counsel to ask questions on this subject. As such, the issue is waived.

**¶{20}** In fact, the defense asked the court to strike the plaintiff's expert's testimony on the basis of the broken promise. *Appellant's* response was that a promise made at discovery was a credibility issue for the jury. (Tr. 63). Thus, appellant conceded that the question was one for the jury.

**¶{21}** Appellant also complains here that defense counsel used false information to attack the expert's credibility. Specifically, defense counsel elicited from plaintiff's expert that he required the defense to pay him $1,000 for his time spent giving his deposition. (Tr. 27-28). It was noted that the expert had acknowledged at deposition that this amount had been paid to him by the defense. (Tr. 34, 42). It was then elicited that the deposition took less than two hours and that the expert's hourly rate was $250 per hour, which should have totaled only $500. (Tr. 28). No objection was entered to this line of questioning at trial.

**¶{22}** Initially, we note that there is no dispute regarding the admissibility of evidence concerning how much the plaintiff's expert was paid by the defense to testify at deposition. See, e.g., *State v. Fears* (1999), 86 Ohio St.3d 329, 334 (can discuss expert's fee to show bias or pecuniary interest); *Ede v. Atrium S. OB-GYN, Inc.* (1994), 71 Ohio St.3d 124, 126 (scope of cross-examination of expert on issues that relate to bias or pecuniary interest is best left to trial court's sound discretion). Rather, the issue raised is that defense counsel appears to have erroneously believed that he paid $1,000 to plaintiff's expert.

**¶{23}** As appellant stated in seeking a new trial, the expert went through his records after trial and discovered that he only billed the defense $600 ($500 for the two hours at deposition and $100 for travel time) and the defense likewise only paid him $600. An affidavit from the expert was attached, along with his billing statement

and the check stub. Appellant concludes that the questioning thus constituted misconduct of the prevailing party under Civ.R. 59(A)(2) and newly discovered evidence, material to the movant, which with reasonable diligence could not have been discovered and produced at trial under Civ.R. 59(A)(8). Appellant contends that the failure to object at trial was due to the fact that the expert billed the defense directly so that appellant was unaware of the discrepancy.

¶{24} First, there is no indication that the use of the wrong figure entailed misconduct as opposed to mistake. Second, the expert had the opportunity to explain about travel time at trial and did not do so. Third, defense counsel was only repeating what had already been admitted at deposition eight months prior to the trial. The expert should have checked his billing statement then. Moreover, if appellant wondered why the defense was charged for more hours than were actually spent, the time to investigate was prior to trial (after the issue was clearly raised at deposition), not after trial when the defense quite predictably used the admission from deposition to present a credibility issue.

¶{25} Regardless, the trial court could rationally conclude that the defense's suggestion that the plaintiff's expert overbilled by $400 was not so prejudicial that it tainted the verdict. See *Harris*, 116 Ohio St.3d 139 at ¶36, 38 (appellate court should defer to trial judge, who has discretion to determine whether alleged misconduct was sufficient to taint the verdict with passion or prejudice). This is especially so where it appeared from the deposition (which was read to the jury) that defense counsel consented to pay for more hours than were actually spent. For all these reasons, this argument is overruled.

DEFENSE EXPERT'S OPINION

¶{26} Appellant contends that the defense expert's report should have been supplemented in discovery. Appellant believes that the expert's opinion changed between deposition and trial. In particular, appellant alleges that the expert's trial testimony was that he no longer expected the line to be tied off to something on the pole, citing to pages 57-58 of the transcript. Appellant concludes that this testimony constituted grounds for a new trial under Civ.R. 59(A)(3), dealing with accident or surprise which ordinary prudence could not have guarded against. (We note that appellant does not contend misconduct in the failure to supplement discovery as the

expert testified that he never advised defense counsel that new information caused him to retreat from one of his examples of how the line could have been secured.)

¶{27} Initially, we point out that appellant misconstrues a portion of the defense expert's testimony. At deposition, this expert stated that it would be appropriate for the blocks holding the line to be tied-off to the cross-arm or to the insulator during a repair. (Tr. 56-57). The expert testified at trial that due to the wet conditions that existed in this case, the employees could not have tied the rope to the cross-arm as this could have electrified the rope. He maintained his opinion (which worked in *plaintiff's* favor) that they could have tied-off the rope to the insulator. (Tr. 58). Thus, contrary to appellant's claim, the defense expert did not testify at trial that the line could not have been tied to anything.

¶{28} Next, we note that it was pointed out at trial that the expert testified at deposition that there were several methods that could be used to secure a line. (Tr. 66). As plaintiff's counsel acknowledged, Mr. Sturgeon's deposition (containing the specifics of how the line was raised) was provided to the expert prior to trial but was not taken until after the expert's deposition. (Tr. 56). The expert's deposition confirms that he was not yet aware of the specifics of how the line was raised at the time of his deposition.

¶{29} Moreover, the expert noted at deposition that there were different arrangements of block systems and stated that it was possible the employees used "the Chinese finger" grip (which he later found out was the method used). (Depo. Tr. 43). The expert's trial testimony was that this block and grip system would have provided a secure situation. (Tr. 67). This does not directly contradict the deposition testimony and is not alleged to contradict the report.

¶{30} As appellee points out, the expert insisted at trial that his opinion had not changed, but rather that he merely received further information that confirmed his original opinion. (Tr. 62-63). He insisted that his conclusion was the same as it was expressed in his report: that the line was secured. He noted that he would have told defense counsel had his opinion changed and further disclosed that he did not notify defense counsel of any change. (Tr. 63).

¶{31} We conclude that any change was not a material surprise as the specific testimony contested by appellant was not on the ultimate issue of whether the line was

secured. In addition, plaintiff's counsel cross-examined the defense's expert on his impressions that the testimony changed, and the jury was able to consider this allegation. It is also notable that *the defense* similarly alleged that *the plaintiff's* expert's opinion changed. This alleged "change" was also due to the fact that Mr. Sturgeon's deposition was taken after the expert testified at deposition. (Tr. 58, 70). Defense counsel moved (unsuccessfully) to strike the testimony of the plaintiff's expert. (Tr. 57). Thus, both sides had the same complaint against each other, and neither saw that the further information received from Mr. Sturgeon's deposition warranted supplemental discovery in the form of a new report from their respective experts.

¶{32} Along these lines, there is no indication of any objection being entered in the record. By objecting, any alleged surprise could have been rectified by a continuance or a recalling of a witness. See, e.g., *Kroger v. Ryan* (1911), 83 Ohio St. 299, 306 (a party cannot fail to voice objection and then claim surprise in a new trial motion); *Porter v. Keefe*, 6th Dist. No. E-02-018, 2003-Ohio-7267 (a claim of surprise as a ground for a new trial is without merit where the movant failed to object to the trial court about the surprise); *City of Dayton v. Moser* (Sept. 11, 1998), 2d Dist. No. 16773; *State v. Patton* (Mar. 5, 1992), 3d Dist. No. 01-91-12 (the issue is waived if appellant fails to object at trial to the failure to supplement discovery regarding a witness's testimony at a time when the court could have granted a continuance or recess).

¶{33} It is well-established that where no timely objection was made on a particular issue, the issue is generally waived because plain error is rarely recognized in a civil case. *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶43. The doctrine can be applied only in an "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id., quoting *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122-123.

¶{34} For all the reasons expressed above, the defense expert's testimony does not present such circumstances. Consequently, the trial court did not abuse its discretion in denying a new trial on this basis. This argument is overruled.

<u>LIGHTNING</u>

¶{35} Appellant states that a new trial should have been granted under Civ.R. 59(A)(2) due to misconduct of the prevailing party where defense counsel insinuated that lightning played a role in the decedent's death. Appellant claims that defense counsel broke an agreement regarding a motion in limine.

¶{36} Prior to trial, appellant filed a motion in limine requesting the court to preclude the defense and their witnesses "from presenting, mentioning or insinuating that a lightning strike occurred either causing the electrical wire to come down and/or directly causing Lisa K. Smith's death." The motion stated that there was no evidence that she died as a result of a lightning strike and thus the defense should not invite speculation as to whether she was struck by lightning or as to whether lightning hit the line which electrocuted her.

¶{37} Apparently, the parties discussed this motion off-the-record with the court. Later, at an on-the-record discussion, appellant sought to present a rebuttal witness, who would testify that the decedent was not struck by lightning. (Discussions Tr. 2). It was stated that this expert was not brought forth in plaintiff's case-in-chief because it was anticipated that the defense would refrain from arguing that the decedent died due to lightning. Id. at 3.

¶{38} A discussion ensued concerning whether the defense agreed to refrain from arguing that lightning played any part in the decedent's death or whether the defense merely agreed to refrain from arguing that she died from being struck by lightning. Id. at 4-13. The court resolved the discussion by stating that in closing arguments, the defense shall not "invite speculation or insinuate that there was a lightning strike into the water that caused a current that caused the death." Id. at 13.

¶{39} Plaintiff's attorney agreed that he would be satisfied by this condition. Id. The court then stated that to keep the defense from mentioning the circumstances that existed that day would be unfair, noting that there was evidence presented that even a wet rope can conduct a current. Id.

¶{40} Thus, contrary to plaintiff's argument, the defense was not barred from discussing the idea that lightning could have caused the line to fall and that, if the falling line was not electrified by city power at the time, lightning may have imparted its current at the time of the strike causing the line to become electrified temporarily.

Rather, the defense was merely barred from arguing that lightning directly struck the decedent's person or the water in which she had been walking.

¶{41} On this topic, appellant takes issue with two portions of defense counsel's closing arguments. First, defense counsel stated: "They have to jump over the legal hurdle of what it was that actually caused the death of Lisa Smith." (Defense Closing Tr. 5). Later, defense counsel stated:

¶{42} "there was no energy leaving that transformer leading down the line, the very line that was in the vicinity where Lisa was found. There was a lot of activity that night. There was a whole lot of lightning that night. There was a whole lot of inclement weather that night. But the one thing we know is that there was no power flowing through that transformer and thus there could be no power flowing through that line that was in the downed area." Id. at 12-13.

¶{43} The defense's closing argument continued by noting that the plaintiff wanted the jury to speculate that the line was energized by the city's electrical current at the time. Id. at 13-14. It was pointed out that the employees stood in the water and did not get shocked. Id. at 14.

¶{44} Contrary to appellant's contention, none of this was set forth in order to suggest that lightning struck the decedent directly or directly struck the water. The defense passed the insulator around to the jury and referenced the testimony which opined that the insulator appears to have been struck by lightning. The defense clearly argued that lightning likely struck the insulator, which caused the wire to disengage and fall. Id. at 16. The defense may have suggested that just as a wet rope can conduct current from an electrified line, a lightning strike can impart current into a non-electrified line causing the same electrocution that a line electrified by city power would cause to a person standing in the water into which the line fell.

¶{45} This does not violate the court's boundary imposed at the pre-closing discussions. The defense was only barred from arguing that lightning struck the decedent's person directly or struck the water directly. As such, this argument is overruled.

¶{46} Moreover, appellant did not object during the defense's closing argument. Thus, the issue was waived. See *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶49; *Gable*, 103 Ohio St.3d 449 at ¶40. There is no argument here

of civil plain error.  In any event, the doctrine is rarely used, and the test for imposing it has not been met here as there are no exceptional circumstances which seriously affect the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.  See *Gable*, 103 Ohio St.3d 449 at ¶43, quoting *Goldfuss*, 79 Ohio St.3d at 122-123.

**¶{47}**  For all of the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.