[Cite as *Wood v. Harborside Healthcare*, 197 Ohio App.3d 667, 2012-Ohio-156.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96286**

# WOOD,

APPELLANT,

v.

# HARBORSIDE HEALTHCARE ET AL.,

APPELLEES.

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-688279

**BEFORE:** Keough, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 19, 2012

**ATTORNEYS:**

The Dickson Firm, L.L.C., and Blake A. Dickson, for appellant.

Reminger Co., L.P.A., Thomas A. Prislipsky, Martin T. Galvin, Rafael P. McLaughlin, and Brian D. Sullivan, for appellees.

KATHLEEN ANN KEOUGH, Judge.

{¶ 1} Plaintiff-appellant, Dolores Wood ("Wood"), as the personal representative of the estate of Frank Wood, deceased, appeals from the judgment of the common pleas court in favor of defendant-appellee Harborside Healthcare–Broadview Heights Rehabilitation and Nursing Center ("Harborside"), following a jury verdict on Wood's claim alleging nursing-home negligence. Wood further appeals the trial court's denial of her motion for a new trial. Finding merit to the appeal, we reverse the judgment and remand the cause for a new trial on proximate cause and damages.

I

{¶ 2} On July 16, 2005, 87-year-old Frank Wood was admitted to Harborside for short-term rehabilitation following knee-replacement surgery. While at Harborside, he developed a clostridium difficile infection. He was eventually taken to the hospital, where he died five days later.

{¶ 3} Wood filed suit, alleging that Harborside had been negligent in failing to timely diagnose and treat Frank's infection. Harborside denied the allegations of Wood's complaint, asserting that its care of Frank had not been negligent and that there was no proximate-cause relationship between the care it rendered to Frank and his ultimate death.

{¶ 4} The matter proceeded to a jury trial. During deliberations, the jury considered the following interrogatories:

{¶ 5} Interrogatory No. 1: "Has Plaintiff proven, by a preponderance of the

evidence, that Defendant, Harborside Healthcare, was negligent in the care and treatment of Decedent, Frank A. Wood?"

{¶ 6} Interrogatory No. 2: "State in what respect(s) you find that Defendant, Harborside Healthcare, was negligent."

{¶ 7} Interrogatory No. 3: "Has Plaintiff proven, by a preponderance of the evidence, that the negligence of Defendant, Harborside Healthcare, was a proximate cause of injury *and* death of Frank A. Wood?"[1]  (Emphasis added.)

{¶ 8} Interrogatory No. 4: "State an amount of money that you find will compensate the Plaintiff for Mr. Wood's pain and suffering and loss of enjoyment of life up to the time of his death."

{¶ 9} Interrogatory No. 5: "State an amount of money you find will compensate the next of kin of Frank Wood for their damages caused by his *death*."  (Emphasis added.)

{¶ 10} Following deliberations, the jury returned a general verdict in favor of Wood.  The jury answered yes to interrogatory No. 1, finding that Harborside had been negligent in its care and treatment of Frank, and stated in its answer to interrogatory No. 2 that Harborside had been negligent as follows: "Doctor not contacted early enough about diarrhea.  Senna given when it should not have.  Poor charting.  Chart not complete." The jury answered no to interrogatory No. 3, finding that Harborside's negligence was not the proximate cause of Frank's injury and death.   Consistent with the instructions, the jury

---

1. Following the signature lines, at the bottom of the page, the interrogatory instructed: "If you answered 'no' to this Interrogatory, skip to Interrogatory No. 5.   If you answered 'yes' to this interrogatory, proceed to No. 4 and then No. 5."

skipped interrogatory No. 4 and proceeded to interrogatory No. 5, awarding $250,000 in damages to Frank's next of kin for their damages caused by his death.

{¶ 11} After reviewing the jury's general verdict and interrogatory answers, the trial court instructed the jury that its interrogatory answers were inconsistent with the general verdict. The court instructed the jury that the instruction at the conclusion of interrogatory No. 3 was incorrect and should have stated, "[I]f you answered 'no' to this interrogatory, conclude deliberations." The judge scratched out that part of the instruction that stated "skip to Interrogatory No. 5" and above it wrote, "conclude deliberations." The court then instructed the jury to resume deliberations and "make the appropriate changes" to their interrogatory answers. The court did not provide the jury with a new general verdict form or new interrogatories.

{¶ 12} When the jury returned after deliberating a second time, the jury again returned a verdict for the plaintiff. It again answered yes to interrogatory No. 1, finding that Harborside had been negligent; it again identified how Harborside had been negligent in its response to interrogatory No. 2; and it again answered no to interrogatory No. 3, finding that Harborside's negligence was not the proximate cause of Frank Wood's injury and death. It did not answer interrogatory No. 4, and on interrogatory No. 5, it crossed out the amount it had written in earlier.

{¶ 13} The judge again told the jury that its verdict was inconsistent with its answers to the interrogatories and instructed the jury to continue its deliberations. When the jury returned after deliberating a third time, it entered a verdict for Harborside.

{¶ 14} The trial court finally accepted the verdict and, after polling the jury, entered

judgment on the jury's verdict. Wood subsequently filed a motion to vacate the trial court's judgment and/or for a new trial on the issues of proximate cause and damages. The court denied the motion and ruled that Wood was not prejudiced by the jury's further deliberations because "Interrogatory 3 inconsistent with Interrogatory 5 and verdict, due to erroneous directions in Interrogatory #3" and Wood had not objected to the trial court's handling of the deliberations.

{¶ 15} Wood now appeals from the trial court's judgment.

II

{¶ 16} In her second assignment of error, Wood contends that the trial court erred in denying her motion for a new trial on proximate cause and damages because the significant irregularities in the jury deliberations denied her a fair trial. We address this assignment of error first because it is dispositive of the appeal.

{¶ 17} Civ.R. 59(A)(1) provides a trial court with discretion to grant a new trial when there is an irregularity in the proceedings that prevents a party from having a fair trial. "The rule preserves the integrity of the judicial system when the presence of serious irregularities in a proceeding could have a material adverse effect on the character of and public confidence in judicial proceedings." *Wright v. Suzuki Motor Corp.*, Meigs App. Nos. 03CA2, 03CA3, and 03CA4, 2005-Ohio-3494, ¶ 114. The term "irregularity" in this context is "very comprehensive" and describes "a departure from the due, orderly, and established mode of proceeding, therein, where a party, with no fault on his part, has been deprived of some right or benefit otherwise available to him." *Reeves v. Healy*, 192 Ohio App.3d 769, 2011-Ohio-1487, 950 N.E.2d 605, ¶ 18. We review a trial court's decision to

grant or deny a motion for a new trial for an abuse of discretion.  Id.

{¶ 18} In light of the significant irregularities in the jury deliberations, we find that the trial court abused its discretion in denying Wood's motion for new trial.  The trial court denied Wood's motion because it found the instruction at the end of interrogatory No. 3 to proceed to interrogatory No. 5 if the jury answered no to interrogatory No. 3 to be erroneous, and thus it concluded that the jury's verdict in favor of Wood when it returned from deliberating the first time was inconsistent with its interrogatory answers.  But the trial court's ruling ignores the fact, which both parties acknowledged at oral argument, that the alleged error in interrogatory No. 3 was pointed out to the trial judge prior to jury instructions and the judge promised to correct the error, but failed to do so.  The trial court did not read the interrogatories to the jury, so the attorneys were not aware prior to deliberation that the error had not been fixed.  Thus, any alleged inconsistency was created by the trial court, not by Wood.

{¶ 19} Furthermore, it is not apparent that the jury was, in fact, confused by the alleged erroneous instruction regarding interrogatory No. 3.  It is not speculative to conclude that the jury's initial answers to the interrogatories indicated that the jury found that although Harborside was not the proximate cause of Frank Wood's clostridium difficile infection, i.e., his *injury*, its negligent actions with respect to the care and treatment of his infection, were indeed the proximate cause of his *death*.  When the jury returned the first time, it returned a verdict for the plaintiff, found that Harborside had been negligent, explained how Harborside had been negligent, and then, in its answer to interrogatory No. 5, listed $250,000 as the amount that would adequately compensate

Wood's relatives for the damages caused by his death. The jury could have easily entered an award of $0 for Wood in interrogatory No. 5 had it found that Harborside's negligence was not the proximate cause of Frank Wood's death. The jury specifically did not answer interrogatory No. 4, which asked them to state an amount to compensate Wood for Frank's suffering "up to the time of his death." Thus, one could infer that the jury did indeed find for Wood with respect to Frank's death and wanted to award her $250,000 for Harborside's negligence regarding his death.

{¶ 20} Nevertheless, the trial court sent the jury back for further deliberations not once but twice, until it finally returned with a defense verdict. At worst, one could conclude that the jury felt compelled by the trial court to return a defense verdict. At best, the jury's inability to follow the judge's instructions, which were confusing, and provide proper and consistent responses to the interrogatories was an irregularity that deprived Wood of a fair trial and just verdict.

{¶ 21} In *Reeves*, 192 Ohio App.3d 769, 2011-Ohio-1487, the jury answered interrogatories finding that the defendant–doctor was negligent and explaining how, but it found no proximate cause and did not award damages for the plaintiff. The magistrate sent the jury back for further deliberations. When the jury returned with a second verdict, the jury answered the interrogatories indicating that the doctor had been negligent and describing how, but the jury again found no proximate cause, despite rendering a general verdict for the plaintiff and awarding the plaintiff economic damages. The magistrate ordered the jury to resume deliberations again. When the jury returned a third time, the jury's interrogatory answers stated that the defendant–doctor had been negligent and that

his negligence had proximately caused the plaintiff's injuries; the jury also entered a general verdict for the plaintiff and awarded $450,000 in damages. The magistrate granted the defendant's motion for a new trial under Civ.R. 59(A)(1) because of an "irregularity" in the proceedings.

{¶ 22} The Tenth District affirmed the grant of a new trial on appeal, finding that "[t]he jury's repeated failure to return a verdict consistent with its responses to the interrogatories, coupled with its obvious confusion in following the [trial court's] instructions regarding the interrogatories, [was] a 'departure from the due, orderly, and established mode of proceeding' that resulted in the defendants' being deprived of the right to a fair trial and just verdict." Id., ¶ 28, quoting Civ.R. 59(A)(1).

{¶ 23} The jury in this case was obviously confused by the trial court's instructions regarding the interrogatories. Furthermore, the judge's instructions and his failure to provide the jury with new interrogatories and jury forms undoubtedly helped to create the irregularity in jury deliberations. Upon initially instructing the jury, the trial court did not read the verdict forms or interrogatories to the jury. Then, the first time he sent the jury back for more deliberations, the judge handwrote new instructions on the same interrogatory forms and returned the jury to further deliberations. He again did not read the interrogatories or verdict forms to the jury to make sure they understood them, but simply instructed the jury to "make the appropriate changes" to them. The next time he sent the jury back, the judge again did not read the interrogatories or verdict forms to the jury, and he again sent them back with the same verdict forms and interrogatories they had already completed, this time with instructions to make them "consistent."

{¶ 24} As in *Reeves*, the jury's obvious confusion in following the trial court's instructions regarding the interrogatories compromised the fairness of the process and the integrity of the result. In short, through no fault of Wood, there was an irregularity in the process that deprived her of the right to a fair trial and just verdict.

{¶ 25} We recognize that counsel for Wood did not object to the trial court's instructions regarding further deliberations and thus has waived all but plain error on appeal. See *Avondet v. Blankstein* (1997), 118 Ohio App.3d 357, 366, 692 N.E.2d 1063. But the result is the same whether we review for abuse of discretion or plain error: the significant irregularities in the jury's deliberations, irregularities that were not created by Wood, deprived her of her right to a fair trial and just verdict. To let the trial court's judgment stand in the face of such irregularities could have a significant negative effect on the public's confidence in these and other judicial proceedings. Wood's second assignment of error is therefore sustained. The trial court's judgment is reversed, and the cause is remanded for a new trial regarding proximate cause and damages.

{¶ 26} In light of our resolution of the second assignment of error, we need not address Wood's first assignment of error. See App.R. 12(A)(1)(c).

Judgment reversed

and cause remanded.

GALLAGHER, J., concurs.
BOYLE, P.J., dissents.

MARY J. BOYLE, Presiding Judge, dissenting.

**{¶ 27}** Respectfully, I dissent and would affirm the trial court's decision denying Wood's motion for a new trial.

**{¶ 28}** The majority holds that Wood was denied a fair trial by "significant irregularities in the jury deliberations." I disagree. While I acknowledge that the proceedings below were not perfect, litigants are not entitled to a perfect trial, only a fair one. *Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, ¶ 30.

**{¶ 29}** The one irregularity that is not disputed pertains to the faulty instruction in the original interrogatory No. 3, which stated the following: "If you answered 'no' to this Interrogatory, skip to Interrogatory No. 5. If you answered 'yes' to the Interrogatory, proceed to No. 4 and then No. 5." The interrogatory should have instructed the jury to "conclude deliberations" if they answered no to interrogatory No.3—it should not have directed them to proceed to interrogatory No. 5. The mistake became apparent to all parties immediately after the jury returned from deliberations the first time—the jury had proceeded to interrogatory No. 5 and awarded damages despite finding no proximate cause in their answer to interrogatory No. 3. The majority focuses on this single mistake by the trial court and criticizes the trial court for failing to appreciate this mistake in ruling on the motion for a new trial. But I find that the majority's focus is misplaced and that the majority fails to appreciate the entire context of the proceedings.

**{¶ 30}** Notably, after the jury returned its inconsistent verdict following the first deliberation—i.e., the jury found no proximate cause in its answer to interrogatory No. 3 but proceeded to the damages question in interrogatory No. 5—no party requested that the trial court grant a new trial on the grounds that the jury had had a faulty instruction in

interrogatory No. 3. To the contrary, both parties, including Wood, acquiesced in the trial court's decision to correct the instruction and return the jury for further deliberations. Wood's counsel never once objected to the manner in which the faulty instruction was handled. Wood's counsel never argued that the jury's initial verdict was consistent and should stand, thereby eliminating the need for further deliberations. The record is abundantly clear that Wood's counsel agreed that the instruction should be corrected and the matter returned to the jury. In light of these proceedings, I fail to see how Wood can now complain and argue that she was denied a fair trial. See *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43 (where no timely objection is made on a particular issue, the issue is generally waived because plain error is rarely recognized in a civil case); *Fennell v. Columbiana*, 7th Dist. No. 09CO42, 2010-Ohio-4242 (trial court does not abuse its discretion in denying a motion for a new trial when the party failed to object and raise the issue during the trial).

{¶ 31} Next, I disagree with the majority's conclusion that the proceedings were so irregular by virtue of the jury's deliberating three times that it deprived Wood of a fair trial. The majority reaches this conclusion by agreeing with Wood's argument that the initial verdict may have been consistent with its answers to its interrogatories—i.e., that the jury answered no to interrogatory No. 3 (the proximate-cause interrogatory) solely because the interrogatory relates to both injury *and* death. Wood contends that the initial verdict in her favor was consistent with the jury's answers, including the jury's answer of no to interrogatory No. 3, because the jury separately awarded damages arising out of Frank's death in interrogatory No. 5. Agreeing with this, the majority states that

"one could infer that the jury did indeed find for Wood with respect to Frank's death and wanted to award her $250,000 for Harborside's negligence regarding his death." But the jury answered no to interrogatory No. 3—the proximate-cause question. Indeed, the jury consistently answered no to this question. Therefore, I refuse to speculate that the jury intended to answer yes to that portion of the question relating to injury.

{¶ 32} As for the jury initially awarding $250,000 in answering interrogatory No. 5, it was clearly a result of the faulty instruction in interrogatory No. 3 that directed the jury to answer interrogatory No. 5 and led the jury to believe that they could award damages despite finding no proximate cause. Notably, the majority emphasizes that the jury "specifically did not answer Interrogatory No. 4"—the interrogatory relating to damages for *injuries* to Frank proximately caused by Harborside—as evidence that the jury found no proximate cause between Harborside's negligence and Frank's injuries but that the jury must have found proximate cause between Harborside's negligence and Frank's death because it answered interrogatory No. 5. But the majority fails to recognize that the faulty instruction in interrogatory No. 3 specifically directed the jury to skip interrogatory No. 4 and proceed to interrogatory No. 5; therefore, the jury's not answering the interrogatory was simply a matter of their following the instruction.

{¶ 33} The majority further finds that the trial judge's decision sending the jury back for further deliberations on two additional occasions could be construed "at worst" to mean that "the jury felt compelled by the trial court to return a defense verdict." But again, this statement ignores that the trial court's returning the jury for further deliberations was agreed to by all the parties. Wood's counsel never once objected or

asked the trial court to reduce the answers to the interrogatories and verdict to a judgment. And although the trial judge could not have entered a judgment after the first deliberations, because the answers to the interrogatories were inconsistent themselves, the trial court could have opted to enter a verdict for Harborside once the faulty instruction had been corrected and after the second round of deliberations—at that point, the answers to all the interrogatories supported a verdict for Harborside. See Civ.R. 49(B)(1) (authorizing the trial court to grant judgment in accordance with interrogatory answers when the answers are inconsistent with a general verdict). Out of an abundance of caution, and consistent with the parties' wishes, however, the trial court returned the matter for the jury to deliberate a third time because the jury answered the interrogatories in favor of Harborside but failed to sign a general defense verdict. I fail to see how the third round of deliberations, which served only to benefit Wood, should now serve as grounds for a new trial for Wood.

{¶ 34} Additionally, unlike the majority, I cannot agree that Wood was deprived of some right or benefit through no fault of her own. Here, the gravamen of Wood's entire appeal is premised on the notion that interrogatory No. 3 was confusing because it contained a compound question relating to proximate cause: "Has Plaintiff proven, by a preponderance of the evidence, that the negligence of Defendant, Harborside Healthcare, was a proximate cause of injury *and* death of Frank A. Wood?" (Emphasis added.) The majority agrees with Wood that the jury may have found that Harborside's negligence proximately caused Frank's death but had to answer no based on how the interrogatory was worded. But Wood's proposed interrogatory for proximate cause was

substantially similar to the one adopted by the court and specifically contained a compound question related to proximate cause. Wood therefore has invited the very error that she now relies on for purposes of a new trial. Moreover, Wood never polled the jury to substantiate her claim that the jury did indeed believe that Harborside's negligence proximately caused Frank's death. Given that Wood could have avoided the very issues that she now complains of, I cannot say that the trial court abused its discretion in denying her motion for a new trial.

{¶ 35} Finally, and most importantly, I cannot agree with the majority that *Reeves v. Healey*, 192 Ohio App.3d 769, 2011-Ohio-1487, 950 N.E.2d 605, supports its decision to reverse the trial court. Although *Reeves* involved an irregularity related to jury deliberations, there are two critical distinctions between *Reeves* and this case: (1) the appellate court in *Reeves affirmed* the trial court's decision to grant a new trial and (2) the party who moved for a new trial had objected to further deliberations by the jury once the jury returned inconsistent answers to the jury interrogatories. Id.

{¶ 36} At the heart of *Reeves* is the recognition that a trial judge or magistrate, who has presided over the proceedings, is in the best position to determine whether a party has been afforded a fair trial and "to assess the jury's flaws in answering the interrogatories." Id. at ¶ 31. Indeed, as recognized by the majority, the decision to grant a new trial "is a decision committed to the trial court's sound discretion, and an appellate court will not reverse such a ruling absent an abuse of discretion." Thus, to agree with the majority, I would have to find that the trial court's decision was "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but

the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1. Here, where Wood failed to object to and even contributed to the alleged confusion, I cannot say that the trial court abused its discretion in denying her motion for a new trial.

{¶ 37} Accordingly, I dissent and would overrule both assignments of error, affirming the trial court's judgment in its entirety.