[Cite as *Riaz v. Lateef*, 2011-Ohio-6401.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

MUHAMMAD RIAZ,           )
                           )     CASE NO.    10 MA 168
     PLAINTIFF-APPELLANT,  )
                           )
     - VS -                )     O P I N I O N
                           )
ABDUL BARI LATEEF, et al.,  )
                           )
     DEFENDANTS-APPELLEES.  )

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court, Case No. 04CV4356.

JUDGMENT:                  Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:           Attorney Christopher Esker
                                      One Cascade Plaza, 15th Floor
                                      Akron, Ohio  44308-1108

For Defendants-Appellees:        Attorney Matthew Giannini
                                      1040 South Commons Place, Suite 200
                                      Youngstown, Ohio  44514

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  December 7, 2011

VUKOVICH, J.

¶{1}   Plaintiff-appellant Muhammad Riaz appeals the decision of the Mahoning County Common Pleas Court granting judgment in favor of defendants-appellees Abdul Bari Lateef and Kauser Lateef (the Lateefs).

¶{2}   Riaz's first argument is the trial court's judgment that the Lateefs were entitled to damages in the amount of $5.01 was against the manifest weight of the evidence.   His second argument is the trial court abused its discretion when it overruled his Civ.R. 59 motion for new trial.

¶{3}   For the reasons expressed below, we do not find that a new trial is warranted.   However, the judgment of the trial court is reversed and remanded with instructions to explain its figures and to correct obvious errors.

STATEMENT OF THE CASE

¶{4}   In December 2004, Riaz filed a complaint against the Lateefs.   That complaint was amended in November 2006.   It alleged that the parties entered into a joint venture to purchase property located at 1478 Churchill Road, Liberty Township, Ohio.   Riaz asserted in the complaint that the Lateefs breached the contract when they failed to pay their half of the mortgage payments.   He asserts that due to that failure foreclosure was initiated, the parties were forced to sell the property for a reduced amount, and that his credit and reputation were damaged.   He further alleges that the Lateefs had a fiduciary duty to him and that they breached that duty which resulted in damage.

¶{5}   The Lateefs filed an answer and counterclaim to the original complaint in March 2005 and an answer and counterclaim to the amended complaint in April 2007. They admitted that they entered a joint venture with Riaz, however, they denied that they breached the agreement.   They counterclaimed asserting Riaz breached the contract when he failed to pay his half of the mortgage payments and other expenses. They also alleged a breach of fiduciary duty and sought monetary damages.

¶{6}   Prior to trial, the parties stipulated to the following facts.   The parties entered a joint venture to purchase the property located on Churchill-Hubbard Road for $135,000.   The parties secured a loan from First National Bank in February 2000 in the amount of $94,500.   Lateef paid $3,000 in earnest money and $37,326.52 was to be paid upon closing.   The property that was purchased was leased by Lawson's Inc.,

which operated a Diary Mart at that location. The lease payments were to cover the mortgage payments. In January 2002, Lawson's Inc. filed for bankruptcy and discontinued paying the lease payments. The parties were then each responsible for half the mortgage payment and other expenses. The failure to pay the mortgage resulted in the initiation of foreclosure by the bank. Prior to foreclosure, the property sold for $98,000 with all proceeds applied to the costs of the sale and the satisfaction of the mortgage and promissory note. There was no profit.

¶{7} Following trial, the trial court awarded the Lateefs $5.01 on their counterclaim. It reasoned:

¶{8} "Based on the testimony and evidence presented to the Court finds [sic] that neither party proved they are entitled to any type of compensation for damages. The Court finds that both parties expended approximately the same amount of funds from their personal finances and that both parties were equally damaged by the foreclosure action and sale of the property. However, the Court finds Defendants expended $10.02 more than Plaintiff. Therefore Defendants are awarded $5.01 on their Counterclaim." 08/10/10 J.E.

¶{9} Thereafter, Riaz filed a timely motion for new trial. The Lateefs responded and the trial court overruled the motion. Riaz appeals from both orders.

### FIRST ASSIGNMENT OF ERROR

¶{10} "THE TRIAL COURT'S JUDGMENT ENTERED AUGUST 10, 2010 IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE, AND AN ABUSE OF DISCRETION."

¶{11} Appellate review of the manifest weight of the evidence in a civil case is much more deferential to the trial court than in a criminal case. *State v. Wilson,* 113 Ohio St.3d 382, 2007–Ohio–2202, ¶26. The civil manifest weight of the evidence standard provides that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Id. at ¶24, citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279. The reviewing court is obliged to presume that the findings of the trier of fact are correct. Id., citing *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81. This presumption arises in part because the fact-finder occupies the best position to watch the witnesses and observe their

demeanor, gestures, eye movements, and voice inflections and to utilize these observations in weighing credibility. Id. The *Wilson* Court concluded:

¶{12} "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id.

¶{13} As to the amount of money each party put into this joint venture, the trial court found that overall the Lateefs expended $10.02 more than Riaz. In reaching its decision the trial court made the following findings. It stated that through the evidence, Riaz paid from his own personal money a total of $18,436.28. This consisted of $11,196.92 that he paid to the bank from October 2002 through April 2004, plus a September 30, 2003 payment of $1,492.90, two other payments both in the amount of $373.23 and an extra $5,000 at closing.

¶{14} The trial court did not add the $37,326.52 down payment that was paid by Riaz from his personal bank account at closing to the above tally. While Riaz questions the trial court's entire computations, he focused much of his attention on the trial court's failure to credit him the entire $37,326.52 down payment.

¶{15} At trial, the Lateefs presented evidence that the funds for this down payment came from an account that was owned jointly between Riaz and the Lateefs. This joint account was the Sparkle Market account. Prior to buying the Churchill Road property, the parties were in a partnership operating the Sparkle Market on Glenwood Avenue and had a joint bank account for that partnership. This partnership started in 1993 or 1994 and the Sparkle Market was sold in 2001. Thus, the Lateefs were contending that Riaz could not be credited for the entire down payment; rather it had to be divided equally between the parties. They offered the testimony of William Leicht, an accountant, to confirm their position.

¶{16} Leicht avowed that an accounting of the bank account showed that the Lateefs paid the earnest money of $3,000 and Riaz wrote a check from his personal account for the $37,326.52 down payment. (Tr. 163). He then explained that it appeared that the $37,326.52 down payment written on Riaz's personal check in all actuality came from the Sparkle Market account. The testimony is as follows:

¶{17} "Q. And did you do any further review as to that contribution?

¶{18} "A. Yes. Later in the year – that contribution was made in – let me get the exact date. It was made – the original was made on check number 618 dated 2/25 of 2000 in the amount of $37,326.52.

¶{19} "* * *

¶{20} "A. Okay. And then later as we were going through the Sparkle Market accounts, we found a check on 10/11 of 2000. The check was made in the amount of 40,326.52, and that represents the earnest money of $3,000 and the down payment at the closing. And on the check description it says payment of some sort.

¶{21} "Q. And what was the date on that?

¶{22} "A. That check is dated 10/11 of 2000, and it was deposited – that check was written on the Sparkle Market account, check number 9608. It was deposited into the account of Muhammad J. Riaz, check number – or checking account 014028963. And it's indicated it is check number 9608." (Tr. 163-164).

¶{23} However, on cross-examination Leicht admitted that other than the numbers looking similar, he did no other investigation to find out from Riaz what the check was for. (Tr. 175).

¶{24} Riaz claimed that the money taken from the Sparkle Market account eight months after he paid the down payment was a repayment of money he had loaned to Sparkle Market for cash checking purposes.

¶{25} Considering the evidence presented, the trial court did not believe Riaz. It explained:

¶{26} "Plaintiff asserted that this money was previously lent to that business for cash checking purposes and that this was a repayment of those funds. Plaintiff attempted to show other transactions similar in nature; however, none of those other transactions appear to be odd dollar amounts. Thus, the Court finds this argument to be suspect."

¶{27} Given the deferential standard of review for civil manifest weight arguments, we will not reverse the trial court's decision. Even if we were to disagree with the trial court's credibility determination, that is not enough to reverse for being against the manifest weight of the evidence. *Wilson,* supra, at ¶24. Therefore, we do not find that the trial court abused its discretion when it did not credit Riaz for the down payment.

¶{28} Riaz further argues in general that the trial court's award is against the manifest weight of the evidence. Thus, the award as a whole must be examined.

¶{29} The trial court stated that it used Exhibits G and S to find that Riaz paid at total of $11,196.92 from October 2002 through April 2004. It also stated that Riaz paid an extra $5,000 at closing and made a payment of $373.23 in July 2004 and in August 2004.

¶{30} While the testimony does clearly establish that Riaz paid an extra $5,000 at closing, it is unclear to this Court how the trial court reached the $11,196.92 figure for payments made from October 2002 through April 2004. In examining all of the exhibits, we are unable to discern how this figure was derived. Furthermore, we note that in computing only from October 2002 through April 2004 does not include payments made by Riaz from January 2002 through October 2002. Riaz and the Lateefs agreed that following Lawson's bankruptcy in January 2002, they each became responsible for one half of the monthly mortgage payment. In Bari Lateef's testimony, he admitted that Riaz made at least one payment during that period. Likewise, we also note that Plaintiff's Exhibit S clearly shows that Riaz made a payment of $373.23 in May 2004.

¶{31} In addition to the above, it is also unclear to this court why the trial court credited Riaz for the alleged July and August 2004 payments. Exhibit G is a hand written computation done by Riaz that purports to show all the payments made by Riaz. That exhibit shows that he made payments in July and August 2004. That evidence, however, is contradicted by Riaz's own testimony that he did not make any payments during those two months. (Tr. 55). It is also contradicted by Exhibit L which shows the checks were marked as void.

¶{32} Our attention now turns to the trial court's findings as to the Lateefs. It found that they had "paid $7,527.80 to the bank during the period of January 2002 thru July 2003 and $11,919.50 in taxes and other expenses for a total of 18,446.30." At the outset it is noted that the math is incorrect. Adding $7,527.80 to $11,919.50 equals $19,447.30, not $18,446.30.

¶{33} As to the taxes and other expenses, Bari Lateef's testimony confirms the $11,919.50 figure. That figure is derived from $6,090.34 for taxes, $5,048 for insurance, $507.58 for miscellaneous, $190.03 for gas and $83.55 for gas. (Tr. 195). The $1,049 for the EPA was not added in because it covered the entire ownership of

the building, not just the last two years when Lawson's Inc. was not paying the lease. (Tr. 195-196). Therefore, the figure as to the taxes and other expenses is not against the manifest weight of the evidence.

¶{34} It is unclear to this court how the trial court derived the $7,150.97 figure for the amount of money the Lateefs paid to the bank for mortgage payments from January 2002 through July 2003. Similar to the $11,196.92 figure credited to Riaz for mortgage payments, it is unclear from an examination of the exhibits how that number was determined.

¶{35} Therefore, as to the amount of money expended by each of the parties, most of the trial court's findings were not against the manifest weight of the evidence. That said, we are unable to discern how the trial court derived some of the figures it did. Specifically, the amount of money attributable for each party for their respective portions of the mortgage payments, i.e. the $11,196.92 attributed to Riaz and the $7,527.80 attributed to the Lateefs. Our inability to determine where that number came from does not render the judgment against the manifest weight of the evidence, but rather makes it difficult for this court to determine whether the judgment is against the manifest weight of the evidence.

¶{36} As to the other claims asserted in Riaz's complaint, breach of fiduciary duty and compensation for his loss of creditworthiness and reputation, the trial court found that he was not entitled to compensation for any of those claims. That decision is not against the manifest weight of evidence. Riaz did testify that his reputation and credit was ruined. However, the Lateefs indicated that he was in arrearages in his child support at that time. They also showed that he was able to buy a car during that period. There was no testimony from anyone else that there were negative statements about him in the business community nor was there any documentation of denied loans. Consequently, the determination of the remaining claims was dependent upon believing Riaz's arguments. As previously stated, even if this court holds a different opinion as to whether Riaz's is credible, that is not enough to reverse for being against the manifest weight of the evidence. *Wilson,* supra, at ¶24. Consequently, the trial court's determination on the remaining claims is not against the manifest weight of the evidence.

¶{37} In conclusion, while the majority of the trial court's findings were not against the manifest weight of the evidence, we are unable to discern where some of

the figures come from and there is a mathematical error in the trial court's judgment. Therefore, the matter must be reversed and remanded to the trial court to correct obvious errors and to provide reasons for coming up with the figures it did. That said, those deficiencies do not require a new trial, just correction and explanation. This assignment of error has some merit.

SECOND ASSIGNMENT OF ERROR

**¶{38}** "THE TRIAL COURT'S JUDGMENT ENTERED OCTOBER 22, 2010 IS AN ABUSE OF ABUSE OF [SIC] DISCRETION."

**¶{39}** We review the trial court's denial of the Civ.R. 59 motion for new trial under an abuse of discretion standard of review. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶35; *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312. An abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**¶{40}** Riaz's motion for a new trial was based on Civ.R. 50(A)(1), (4), (5), (6), (7), and (9). These sections provide a motion for new trial may be granted when there is a:

**¶{41}** "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

**¶{42}** "* * *

**¶{43}** "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

**¶{44}** "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

**¶{45}** "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

**¶{46}** "(7) The judgment is contrary to law;

**¶{47}** "* * *

**¶{48}** "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application."

¶{49} The argument made on appeal is that based upon the arguments presented under the first assignment of error, the trial court abused its discretion when it denied the motion for new trial. Thus, Riaz is limiting this assignment of error to it being an abuse of discretion to deny the motion for new trial based on Civ.R. 59(A)(6), that the judgment is not sustained by the weight of the evidence.

¶{50} We do not find that the trial court abused its discretion in overruling the motion. While there are some computation problems with the trial court's damage award, it does not provide a basis for ordering a new trial. All that is needed is for the trial court to correct its obvious errors and to explain where its numbers came from. Thus, for the same reasons provided under the first assignment of error explaining why a new trial is not warranted, the trial court did not abuse its discretion in denying the motion for new trial based on manifest weight of the evidence. This assignment of error lacks merit.

## CONCLUSION

¶{51} The first assignment of error has some merit. There are some obvious errors in the trial court's computation of damages and it is unclear to this court how the trial court derived the $11,196.92 and $7,527.80 figures. However, those deficiencies do not warrant a new trial. As to the second assignment of error, it has no merit.

¶{52} For the foregoing reasons, the judgment of the trial court is reversed and remanded with instructions to correct obvious errors and to explain some of its figures.

Waite, P.J.,
DeGenaro, J.,