[Cite as *Cole v. Titus*, 2012-Ohio-2310.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97447

# WILLIAM G. COLE, ET AL.

### PLAINTIFFS-APPELLEES

vs.

# REBECCA M. TITUS, ET AL.

### DEFENDANTS-APPELLANTS

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-728259

**BEFORE:** Jones, P.J., Cooney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 24, 2012

**ATTORNEY FOR APPELLANTS**

Michael F. Farrell
Law Office of Michael F. Farrell
55 Public Square
Suite 775
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEES**

Marco G. Bocciarelli
Law Offices of Joseph T. Joseph, Jr.
55 Public Square
Suite 1575
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

**{¶1}** Defendant-appellant, Rebecca Titus, appeals the trial court's judgment granting plaintiffs-appellees, William and Joyce Cole's, motion for a new trial. We affirm.

## I.   Procedural History and Facts

**{¶2}** The Coles initiated this action in June 2010, as a result of a February 2009 motor vehicle accident they were involved in with Titus.[1]   According to their complaint, Titus negligently operated her vehicle by failing to yield the right of way while making a left turn and collided with the Coles' vehicle.   The Coles alleged that they were both injured as a result of the accident, and sought damages, including for loss of consortium.

**{¶3}** Titus answered the complaint, denied liability, and counterclaimed, alleging that William Cole's negligent operation of his vehicle caused the accident.   Titus later dismissed her counterclaim, however.

**{¶4}** The case proceeded to a jury trial in July 2011.   The following testimony was elicited at trial, at which liability was contested.   The accident occurred at approximately 7:00 a.m. on February 11, 2009, at the intersection of Dunham and Turney Roads in Maple Heights.   The intersection is governed by a traffic light.

**{¶5}** According to the Coles, they were traveling northbound on Dunham Road, through the intersection at Turney Road.   Both Coles testified that their light was green

---

[1]The Coles also named Nationwide Insurance Company as a defendant, but dismissed the company in July 2010.

and that two cars were in front of them. As they proceeded through the intersection, Titus, who was traveling southbound on Dunham Road, proceeded to make a left turn onto Turney Road, and crashed into the Coles' vehicle. The Coles' vehicle was pushed onto a sidewalk, where it crashed into a utility pole. The impact from the crash knocked the rear axle off, and the air bags deployed. Photos admitted into evidence showed the damage to the Coles' vehicle.

{¶6} William testified that in the moments immediately after the crash, he had trouble breathing, but he was able to get out of the car and could walk. Joyce required assistance being removed from the vehicle[2] and testified that she was suffering a great deal of pain. The responding officer also testified that Joyce was "obviously in pain." Both Coles were transported by ambulance from the scene to a hospital.

{¶7} At the hospital, William had an MRI, chest x-ray, and was given medication to regulate his blood pressure. William testified that bruising he sustained in the accident "bothered" him for a couple of days, but other than that he did not suffer any injury. He did not seek further treatment after he was released from the emergency room.

{¶8} Joyce was treated at the hospital for broken ribs and bruises. Both Joyce and William testified that Joyce suffered enduring pain as a result of the accident and was unable to immediately return to her daily routine. For example, Joyce was not able to return to her job as a nurse manager, and documentation was admitted into evidence from

---

[2]Joyce's door was unable to be opened manually or with the "jaws of life," and she had to be removed from the car through the driver's door.

Joyce's employer showing that she used 196.25 hours of sick time after the accident.[3]
Further documentation was admitted into evidence from Joyce's employer that she was
paid at the rate of $37.53 per hour. The Coles' counsel argued to the jury that Joyce lost
$6,034.28 in wages as a result of the accident. William and Joyce also testified about the
effect Joyce's injuries had on their lives.

{¶9} The Coles and Titus stipulated that in "determining the reasonable value of
medical care" for the Coles, the jury could "consider the original bills in the amount of
$2,743.95 for Joyce Cole and $4,111.05 for William Cole and * * * the amounts accepted
as full payment in the amount of $1,547.10 for Joyce Cole and $1,105.58 for William
Cole."

{¶10} The responding officer testified that William told him he was traveling
approximately 30 m.p.h., and Titus told him that she was traveling approximately 25
m.p.h. According to the officer's assessment of the accident, Titus hit the Coles.

{¶11} Titus testified that as she approached the light, traveling southbound on
Dunham Road, it was red. She got in the left turning lane, stopped for approximately two
seconds, and then proceeded to drive because the green turn arrow came on. Titus
testified that she was driving approximately 5 m.p.h., never saw the Coles' car, but heard
screeching and a bang and then saw the Coles' car on the sidewalk. Titus denied telling
the responding office that she was driving 25 m.p.h. Titus disagreed with the officer's

---

[3]Joyce testified that she used sick time continuously from the date of the accident, February 11, 2009, through March 14, 2009.

assessment that Titus hit the Coles.

{¶12} On this testimony, the jury found that (1) Titus was negligent and (2) Titus's negligence was the direct and proximate cause of injury or damage to the Coles. The jury returned a verdict in favor of William Cole and against Titus, and awarded him $0 for past economic damages, past noneconomic damages, and loss of consortium. Relative to Joyce Cole, the jury returned a verdict in her favor and against Titus in the amount of $3,000 for past economic damages, but $0 for past noneconomic damages and loss of consortium.

{¶13} The Coles filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. Titus opposed the motion, but the trial court granted the motion on the issue of damages only. For her sole assigned error, Titus contends that the trial court abused its discretion in granting the Coles' motion for a new trial.

## II. Law and Analysis

{¶14} We review the trial court's ruling on a Civ.R. 59 motion for new trial under an abuse of discretion standard of review. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 35; *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶15} The Coles' motion for a new trial was based on Civ.R. 59(A)(4) and (6),

which provide as follows:

> A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
>
> * * *
>
> (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
>
> * * *
>
> (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case[.]

{¶16} In granting the Coles' motion for a new trial on damages, the trial court found that the jury's verdict was "so inadequate that it denied the [Coles] the justice they deserved." The trial court further stated that the "jury's assessment of damages shocks reasonable sensibilities. It appears obvious that the verdict is so manifestly against the manifest weight of the evidence as to show a misconception by the jury of its sworn duties." We agree.

{¶17} "The purpose of a civil trial is to fully compensate the injured party for his losses. When that trial has resulted in an award to the injured party so inadequate as to deny him the justice that he deserves, the court should grant a new trial." *Miller v. Irvin*, 49 Ohio App.3d 96, 98, 550 N.E.2d 501 (3d Dist.1988).

{¶18} In *Miller*, the plaintiff suffered physical injuries and lost wages after he was rear-ended by a semi-tractor operated by the defendant. The evidence presented to the jury at trial showed that the plaintiff lost almost $17,000 in wages and incurred $2,316.76

in medical expenses.[4]   The jury awarded the plaintiff $7,000.

{¶19} The Third Appellate District held that the plaintiff should have been awarded his special damages consisting of his lost wages and medical expenses.   The court, therefore, found the jury's award "grossly inadequate."   *Id.*   The court further stated that, "[n]ot only was the $7,000 awarded insufficient to compensate appellant for his special damages, but he was also entitled to some award for his pain and suffering, which he obviously was not awarded."   *Id.*

{¶20} Here, the parties stipulated that in "determining the reasonable value of medical care" for the Coles, the jury could "consider the original bills in the amount of $2,743.95 for Joyce Cole and $4,111.05 for William Cole and * * * the amounts accepted as full payment in the amount of $1,547.10 for Joyce Cole and $1,105.58 for William Cole."   Evidence of Joyce's lost earnings in the amount of $6,034.28 was also admitted.

{¶21} In light of the above, as to Joyce, we do not find that the trial court's conclusion that the jury's $3,000 award for past economic damages to her was "inadequate" was an abuse of discretion.   We are not persuaded by Titus's argument that the record supported the award because (1) Joyce did not have follow-up care; (2) there was no medical expert in the case; and (3) there was no evidence of permanent impairment.

{¶22} As Joyce, a nurse, testified, there really is no treatment for broken ribs — they have to heal on their own — except for pain management.   Joyce testified about how

---

[4]The defendant admitted liability, and the trial was for damages only.

she managed her pain. Thus, her case should not have been discounted because of a lack of follow-up care.

{¶23} Similarly, the case should not have been discounted because of a lack of medical expert testimony. In *White Motor Corp. v. Moore*, 48 Ohio St.2d 156, 357 N.E.2d 1069 (1976), the Supreme Court of Ohio held that, "[w]here the issue of causal connection between an injury and the specific subsequent physical disability involves questions which are matters of common knowledge, medical testimony is not necessary in order to submit the case to the jury." *Id.* at paragraph two of the syllabus. Joyce's injuries were within the realm of common knowledge and, thus, no medical expert testimony was needed. Further, the jury found that Titus's negligence was the direct and proximate cause of Joyce's injury. Moreover, there is no requirement that Joyce had to demonstrate permanent impairment to be compensated for her past economic and noneconomic losses.

{¶24} As to William, Titus contends that the jury properly returned a $0 verdict in his favor because he failed to follow-up with his physician after being discharged from the emergency room, despite having been advised to do so, with no explanation. We disagree. William testified that after he was treated at the emergency room, he was fine; therefore, there was no need for follow-up care. The jury found that Titus's negligence was the direct and proximate cause of William's injury. Allowing a new trial, therefore, to determine whether William is entitled to compensation for that injury, regardless that it was not an enduring injury, was not an abuse of discretion.

{¶25} Finally, loss of consortium is a "loss of the benefits that one spouse is

entitled to from the other, including companionship, cooperation, aid, affection, and sexual relations." Black's Law Dictionary (7th Ed. 1999) 958. To prove a loss of consortium claim, a plaintiff must first prove the underlying tort. *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92-93, 585 N.E.2d 384 (1992). "Once that is shown, the complaining spouse must show damages proximately caused by the negligent act." *Urban v. Goodyear Tire & Rubber Co.*, 8th Dist. Nos. 77162, 77776, and 76703, 2000 WL 1800679 (Dec. 7, 2000).

{¶26} Titus claims that "there was no evidence presented about how the injuries affected the Coles' marriage relationship." We disagree. William testified that for approximately six weeks after the accident, Joyce was unable to do household chores that she had normally performed and so he did them. He testified that for that period of time, Joyce was not able to "really do much."

{¶27} Similarly, Joyce testified that, for approximately six weeks, the accident "significantly impacted" her life, stating that "I really couldn't do much of anything. I mean, the pain was just horrible." Joyce testified about household responsibilities that she previously had done, but was unable to do during her recovery:

> I didn't go downstairs in my laundry room area, because there's quite a few steps, and * * * every time I went down, it hurt, or even when I came up, it hurt. So Bill did really all the laundry. So I didn't do laundry, I didn't do any cooking at all. He did all the dishes * * * he took care of * * * me. * * * And no shopping. I didn't go anywhere * * * I didn't go out.
>
> * * * Bill had to help me get dressed, because I couldn't reach my arms around * * * and I was tired of wearing a robe and walking around like that, so I wanted to finally get some clothes, and Bill would help me with that.

{¶28} On this record, we do not find that the trial court's decision to grant the Coles

a new trial as to damages was unreasonable, arbitrary, or unconscionable.   We therefore overrule Titus's sole assignment of error.

**{¶29}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
MARY EILEEN KILBANE, J., CONCUR