[Cite as *MT Business Technologies, Inc. v. Greene*, 2019-Ohio-4847.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MT BUSINESS TECHNOLOGIES, INC. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee/Cross-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| MICHAEL GREENE, ET AL. | : | Case No. 18-CA-61 |
| | : | |
| Defendants-Appellants/Cross-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 17-CV-00978

JUDGMENT:                       Affirmed/Reversed in Part and
                                Remanded

DATE OF JUDGMENT:               November 25, 2019

APPEARANCES:

For Plaintiff-Appellee/                 For Defendants-Appellants/
Cross-Appellant                         Cross-Appellees

THOMAS P. DILLON                        DAVID K. MONTGOMERY
NICHOLAS T. STACK                       KAREN DUNLEVEY
North Courthouse Square                 PNC Center, 26th Floor
1000 Jackson Street                     201 East Fifth Street
Toledo, OH  43604-5573                  Cincinnati, OH  45202

*Wise, Earle, J.*

{¶ 1}　Defendants-Appellants, Michael Greene and Modern Office Methods, Inc. (hereinafter "MOM"), appeal numerous judgment entries of the Court of Common Pleas of Licking County, Ohio.　Plaintiff-Appellee, MT Business Technologies, Inc., cross-appeals the trial court's July 5, 2018 judgment entry on post-trial motions.

FACTS AND PROCEDURAL HISTORY

{¶ 2}　In July 2003, appellant Greene began working for appellee MT selling and leasing Ricoh copiers and equipment.　He signed an employment agreement that contained a non-disclosure agreement, but did not contain restrictive covenants, non-competition, or non-solicitation provisions.　Prior to working for MT, Greene owned his own business selling and leasing Xerox equipment.

{¶ 3}　In May 2017, MT was acquired by Xerox and was no longer an authorized Ricoh dealer.　In July 2017, Greene submitted a notice of retirement to MT and began employment with MOM who sold and leased Ricoh equipment and was an authorized Ricoh dealer.

{¶ 4}　On October 23, 2017, MT filed an amended complaint against Greene, claiming breach of employment agreement, breach of duty, trade secret misappropriation, unfair competition, and conversion.　On January 5, 2018, MT filed a second amended complaint to add claims against MOM for trade secret misappropriation, unfair competition, and tortious interference with contract.　MT sought injunctive relief and damages.

{¶ 5}　On February 15, 2018, appellants filed a motion for summary judgment seeking dismissal of all of MT's claims because MT could not establish the requisite

elements of each claim. By judgment entry filed March 20, 2018, the trial court agreed Greene never consented to the restrictive covenants and therefore held that MT could not pursue its breach of contract claim relating to those provisions. The trial court denied the motion as to the remaining claims.

{¶ 6} A jury trial commenced on April 4, 2018. The jury found in favor of MT on its breach of employment agreement and trade secret misappropriation claims against Greene, tortious interference with contract claim against MOM, and unfair competition claims against each appellant. The jury also found each appellant acted with malice and/or fraud. The jury awarded MT $665,000 in damages: $375,000 for compensatory damages and $40,000 for punitive damages against Greene, and $225,000 for compensatory damages and $25,000 for punitive damages against MOM. Pursuant to interrogatories, the $375,000 compensatory award against Greene consisted of: $25,000 for the breach, $150,000 for trade secret misappropriation, and $200,000 for unfair competition. The $225,000 compensatory award against MOM consisted of: $25,000 for tortious interference and $200,000 for unfair competition. A final judgment entry on the verdicts was filed on April 10, 2018.

{¶ 7} On April 24, 2018, MT filed a motion for prejudgment interest.

{¶ 8} On May 4, 2018, appellants filed a motion for judgment notwithstanding the verdict (hereinafter "JNOV"), or in the alternative for a new trial.

{¶ 9} On May 15, 2018, MT filed a motion for exemplary damages against Greene for his willful and malicious misappropriation, a motion to tax costs, and a motion for attorney fees.

{¶ 10} By judgment entry filed July 5, 2018, the trial court denied appellants' motion for JNOV or in the alternative for a new trial, denied MT's motions for prejudgment interest and exemplary damages, granted MT's request for injunctive relief for a period of five years, partially granted MT's motion for costs, and partially granted MT's motion for attorney fees. By judgment entry filed July 27, 2018, the trial court entered its order on injunctive relief.

{¶ 11} On August 6, 2018, appellants filed an appeal and assigned the following errors:

I

{¶ 12} "THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT."

II

{¶ 13} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANTS' MOTION FOR A NEW TRIAL."

III

{¶ 14} "THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT."

IV

{¶ 15} "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANTS' OBJECTIONS TO THE ADMISSION OF EVIDENCE RELATING TO APPELLANT GREENE'S PREVIOUS LAWSUIT."

V

{¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION FOR ATTORNEYS' FEES."

VI

{¶ 17} "THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION FOR INJUNCTIVE RELIEF."

{¶ 18} On August 16, 2018, MT filed a cross-appeal and assigned the following errors:

CROSS-ASSIGNMENT OF ERROR I

{¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING CROSS-APPELLANT'S MOTION FOR EXEMPLARY DAMAGES PURSUANT TO R.C. § 1333.63(B)."

CROSS-ASSIGNMENT OF ERROR II

{¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING CROSS-APPELLANT'S MOTION FOR PRE-JUDGMENT INTEREST PURSUANT TO R.C. § 1343.03(C)."

CROSS-ASSIGNMENT OF ERROR III

{¶ 21} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING, IN PART, CROSS-APPELLANT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO THE JURY'S PUNITIVE DAMAGE AWARD AND R.C. § 1333.64(C)."

CROSS-ASSIGNMENT OF ERROR IV

{¶ 22} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING, IN PART, CROSS-APPELLANT'S MOTION FOR COSTS PURSUANT TO CIVIL RULE 54(D), R.C. § 2303.21, AND THE JURY'S PUNITIVE DAMAGE AWARD."

{¶ 23} This matter is now before this court for consideration.

I

{¶ 24} In their first assignment of error, appellants claim the trial court erred in denying their motion for JNOV. We agree in part.

{¶ 25} Civ.R. 50(B) governs motions for JNOV and states the following in part: "Whether or not a motion to direct a verdict has been made or overruled, a party may serve a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion."

{¶ 26} In *Pariseau v. Wedge Products, Inc.,* 36 Ohio St.3d 124, 127, 522 N.E.2d 511 (1988), the Supreme Court of Ohio discussed the standard of review on a motion for JNOV as follows:

While we are aware that the grounds for granting a judgment n.o.v. are not easily met, a motion for such a judgment must be sustained when circumstances so require.

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be

construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." *Posin v. A.B.C. Motor Court Hotel* (1976), 46 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338. (Additional citations omitted.)

{¶ 27} Appellate review of a ruling on a motion for JNOV is de novo. *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* 5th Dist. Stark No. 2006CA00048, 2006-Ohio-6232.

UNFAIR COMPETITION CLAIM

{¶ 28} In their motion for JNOV, appellants challenged the jury's verdict on MT's unfair competition claim. The jury found appellants "by false representations engaged in unfair competition against Plaintiff" and awarded MT $200,000 as against Greene and $200,000 as against MOM for lost profits. Interrogatory Nos. 5 and 8. Appellants argued MT based its unfair competition claim solely on one email sent by Greene to one of its customers, and no proof was presented that this customer was misled by the email or that MT lost any business because of Greene's statements.

{¶ 29} On cross-examination, Greene admitted to sending out the following email dated September 21, 2017, to one of MT's customers, Scott & Nolder Co., LPA: "This is Mike Greene, your Ricoh copy machine rep. I have made the transition to the Authorized

Ricoh dealer…Modern Office Methods. Ricoh has several promotions available for current customers. Can I make an appointment to discuss them with you and Attorney Scott?" T. at 324; Plaintiff's Exhibit 30. On direct examination, Greene acknowledged that he informed MT's customers that he was now with the authorized Ricoh dealer and MT was no longer the authorized dealer. T. at 640.

{¶ 30} Charles Rounds, MT's president, explained because MT was purchased by Xerox, it was no longer a Ricoh authorized service provider for marketing purposes, but they continued to sell new and used Ricoh equipment and provide service and supplies. T. at 426-427.

{¶ 31} The trial court instructed the jury on unfair competition as follows (T. at 807-808):

Unfair competition ordinarily consists of representations by one person for the purpose of deceiving the public that his goods or services are those of another. The concept of unfair competition extends [to] unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements designed to harm the business of another.

MT claims that Greene, while acting as MOM's agent, falsely represented himself to MT customers as the current product representative for those customers. MT claims the statement was false[ly] made to the MT customers to cause confusion and cause MT damages.

If you find by the greater weight of the evidence that MT proved its unfair competition claim, you must further decide whether Greene and/or MOM's unfair competition caused MT to suffer any damages and, if so, in what amount.

If you find from the greater weight of the evidence that MT failed to prove any part of its unfair competition claim, you will then find for Greene and/or MOM.

{¶ 32} Appellants did not object to this instruction.

{¶ 33} Greene sent out an email informing Scott & Nolder, an MT customer, that he was their "Ricoh copy machine rep," presumably because he transitioned to MOM, the authorized Ricoh dealer. In truth, their current Ricoh copy machine rep was whomever replaced Greene at MT. Greene further informed Scott & Nolder that Ricoh has several promotions available for current customers; however, Scott & Nolder was a current customer of MT. In construing the evidence presented most strongly in favor of the non-moving party, we find reasonable minds could have reached different conclusions as to whether Greene falsely represented himself to MT customers as the current product representative for those customers in order to cause confusion and cause MT damages.

{¶ 34} Appellants further argue there was no evidence that MT suffered damages related to Greene's statements. The trial court instructed the jury on unfair competition - damages as follows (T. at 809; Jury Instructions filed April 9, 2018):

GENERAL. If you find by the greater weight of the evidence that Greene and/or MOM engaged in unfair competition, MT is entitled to recover damages.

DAMAGES – LOST PROFITS. Actual loss may include lost profits. Lost profits are calculated by deciding what MT would have received had Greene and/or MOM refrained from unfairly competing with MT. You may only award damages the existence and amount of which are reasonably certain and have been proved to you by the greater weight of the evidence. You may not award damages that are remote or speculative.

{¶ 35} The jury awarded MT $375,000 for compensatory damages against Greene and $225,000 for compensatory damages against MOM. Out of those amounts, a total of $400,000 was attributable to the unfair competition claim ($200,000 each). Interrogatory Nos. 5 and 8.

{¶ 36} Appellants argue evidence was not presented that Scott & Nolder moved its business to MOM or that Green's statements caused any other customers to move to MOM, and there was no evidence that the amount of damages was reasonably certain.

{¶ 37} "[I]n order for a plaintiff to recover lost profits, 'the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty.' " *Ask Chemicals, Inc. v. Computer Packages, Inc.,* 593 Fed.Appx. 506, 511 (6th Cir.2014), quoting *City of Gahanna v. Eastgate Properties, Inc.,* 36 Ohio St.3d 65, 68, 521 N.E.2d 814 (1988). "A plaintiff may not merely assert that it would have made a particular amount of profits, but must prove lost profits with calculations based on facts." *UZ Engineered*

*Products Co. v. Midwest Motor Supply Co., Inc.,* 147 Ohio App.3d 382, 2001-Ohio-8779, ¶55, 770 N.E.2d 1068 (10th Dist.).  " 'Unless the figure is supported by calculations based on facts available or in evidence, the courts will properly reject it as speculative or uncertain.' "  *Ask* at 511, quoting *Endersby v. Schneppe,* 73 Ohio App.3d 212, 596 N.E.2d 1081, 1084 (1991).  "The law in this state requires that evidence of lost profits be based upon an analysis of lost 'net' profit after the deduction of all expenses impacting on the profitability of the business in question."  *Digital & Analog Design Corp. v. North Supply Co.,* 44 Ohio St.3d 36, 48, 540 N.E.2d 1358 (1989) (Wright, J., concurring in part and dissenting in part).

{¶ 38} This court reiterates that in reviewing a decision on JNOV, we must determine whether there is " 'sufficient material evidence presented at trial on this issue to create a factual question for the jury.' "  *Torres v. Concrete Designs, Inc.,* 8th Dist. Cuyahoga Nos. 105833 and 106493, 2019-Ohio-1342, ¶ 78, quoting *Malone v. Courtyard by Marriott Ltd. Partnership,* 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996).

{¶ 39} Mr. Rounds testified to lost revenue of over two million dollars.  T. at 452, 455, 511.  He explained whenever MT received a cancellation request, he and an employee reviewed the individual contracts for average selling price, the actual hardware purchased, and the term of the service agreement, and calculated the lost revenue from each lost customer.  T. at 457-458.  Mr. Rounds then testified to lost profits of $940,000.  T. at 458, 482, 511.  He calculated the lost profits amount on the same records used in determining the lost revenue amount.  T. at 458, 482.  Mr. Rounds stated it was "not exact science.  We just had - - go one contract by another, went through every one and came to a conclusion that this would be the amount of the gross profit or profit of the deal."  T.

at 458. He did not deduct overhead expenses because each contract contained a markup to cover overhead costs. T. at 488. There was no explanation as to what the "markup" entailed. Mr. Rounds was the person responsible at MT to "maintain revenue and profitability numbers." T. at 481. He determined the $940,000 lost profits amount "using the same type of methodology and regular analysis" that he used to review the profitability of MT's business and other contracts. T. at 482. In support, MT presented Plaintiff's Exhibit 37. Said exhibit is a list of MT's lost customers that apparently included amounts for lost revenue, not lost profits, however, the trial court admitted the exhibit after redacting any listed amounts, finding the two million dollar number included in the exhibit to be prejudicial. T. at 461-463, 533. The exhibit as redacted is merely a list of customer names that switched from MT to MOM.

{¶ 40} MT also presented Plaintiff's Exhibits 18 (larger print) and 19 (smaller print), a spreadsheet containing "data regarding your [Greene's] historical sales" for the time period that Greene was employed with MT. T. at 277. The exhibit, prepared by MT on July 3, 2017, contained detailed information on Greene's customer accounts, including gross profits made from each customer. T. at 278-281, 299-300. On cross-examination, Mr. Rounds was asked if the gross profit number minus the sales commission figure equaled MT's net profit. T. at 488-491. Mr. Rounds explained the resulting number would not reflect the actual profit because "I also just told you there's a markup. These are the sales rep transfers." T. at 490. The markup numbers are not included in the exhibit. *Id.* On redirect, he reiterated, "those numbers off the spreadsheet are based off of sales rep costs. There is a markup from true cost to cover the expenses of the company, and so that obviously the company is profitable." T. at 509. MT did not present any exhibits

containing numbers related to lost profits, nor did the employee that helped "crunch the numbers" testify.

{¶ 41} During closing argument, MT's counsel discussed damages as follows: "And we heard from Chuck Rounds. Yeah, there was $2 million plus of revenue and he said that equated to $940,000 in lost profits. To be made whole MT needs $940,000 to make up that difference in the business that Mike Greene diverted." T. at 755. On rebuttal, MT's counsel argued that Mr. Rounds explained one could not figure out lost profits from Plaintiffs Exhibits 18 and 19 "[s]o, I don't think you should try and do that because it's incorrect, it's misleading, and Mr. Rounds explained to you why." T. at 780.

{¶ 42} In its appellate brief at 8, MT argues it claimed lost profits on canceled customer contracts, and those contracts and related invoices were admitted into evidence. Those contracts and invoices were introduced by Greene as Defendant's Exhibit C. Greene explained the contracts and invoices therein were freely given to him by MT customers. T. at 649-650. From these documents, he formulated his proposals on behalf of MOM. T. at 650. The exhibit contained a couple more than half of the contracts/leases of the lost customers listed in Plaintiff's Exhibit 37. Mr. Rounds was not asked about Defendant's Exhibit C, and did not testify on the amounts listed therein. At no time did Mr. Rounds review a contract or lease or invoice and explain what number(s) he used in his calculations to determine lost profits. There was no testimony as to whether the contracts/leases and invoices were current and if the contracts/leases were at the beginning or end of their terms.

{¶ 43} The only evidence in the record regarding lost profits is the testimony of Mr. Rounds. This testimony is not supported by other facts or documents in the record. Mr.

Rounds admitted calculating the gross lost profits amount was not an exact science. Even assuming the credibility of Mr. Rounds's testimony, there is insufficient proof of lost profits. His testimony fails to set forth how he arrived at the final amount of $940,000. Without more in the record, any award for lost profits is speculative and uncertain.

ALL OTHER CLAIMS

{¶ 44} Also in their motion for JNOV, appellants challenged the jury's verdict on all of appellee's claims because appellee's evidence of lost profits was insufficient. Appellants argued appellee failed to establish lost profit damages with reasonable certainty as the only evidence presented was from the company president, Charles Rounds.

{¶ 45} As discussed above, we agree the evidence was insufficient to prove lost profits. All of the claims, including the claim for unfair competition, sought damages based on lost profits except for one, trade secret misappropriation. Said claim sought damages based on lost profits and unjust enrichment. The trial court instructed the jury on unjust enrichment as follows: " 'Unjust enrichment' means the value to Greene and/or MOM of the trade secret resulting from the misappropriation. In determining this value, you may consider the value of customer relationships or contracts realized by Greene and/or MOM as a result of any misappropriation."

{¶ 46} Appellants did not object to this charge, did not raise the issue in their motion for JNOV, and did not claim any error on appeal. Appellants did not specifically challenge the trade secret misappropriation claim and the resulting damages award. The jury could have awarded damages on said claim under the theory of unjust enrichment.

{¶ 47} Appellants further argue because appellee did not sufficiently establish compensatory damages, the trial court erred in not granting the motion for JNOV on the issue of punitive damages.  As compensatory damages were awarded on the trade secret misappropriation claim in the amount of $150,000 against Greene and the jury found the misappropriation was willful and malicious (Interrogatory No. 3), we find punitive damages could be awarded (R.C. 2315.21).  Appellants did not challenge the punitive damages award in any other fashion.

{¶ 48} Upon review, we find the trial court erred in not granting the motion for JNOV on the damages awarded against Greene for breach of contract ($25,000) and unfair competition ($200,000), and against MOM for tortious interference ($25,000) and unfair competition ($200,000).  In light of the fact that the JNOV motion should have been granted on the total amount of compensatory damages assessed against MOM, the motion should have also been granted on the punitive damages award ($25,000) against MOM.

{¶ 49} Assignment of Error I is granted in part and denied in part.

II

{¶ 50} In their second assignment of error, appellants claim the trial court erred in denying their motion for new trial.  Given our decision in Assignment of Error I, we find this assignment to be moot save for the claim of trade secret misappropriation.

{¶ 51} Civ.R. 59 governs motions for new trial and states the following in part as argued by appellants:

**(A) Grounds for New Trial.** A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

(7) The judgment is contrary to law;

In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.

{¶ 52} As explained by this court in *McFarland v. Gillespie,* 5th Dist. Fairfield No. 18-CA-17, 2019-Ohio-1050, ¶ 60:

When considering a motion for a new trial pursuant to Civil Rule 59(A)(6), a court must weigh the evidence and pass on the credibility of the witnesses. A new trial will not be granted where the verdict is supported by competent, substantial, and apparently credible evidence. *Harris v. Mt. Sinai Med. Ctr.,* 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201. Because a trial court is in the best position to decide issues of fact, it is vested with broad discretion in ruling upon motions for new trial based upon Civil Rule 59(A)(6). *Id.* Our standard of review on a motion for new trial is

abuse of discretion.  Civil Rule 59.  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 53} In his May 4, 2018 motion arguing for a new trial on the trade secret misappropriation claim, Greene argued the jury's verdict was "against the manifest weight of the evidence and contrary to law because MT did not present any evidence to sufficiently establish its damages relating to such claims to a reasonable certainty." Because we have determined insufficient evidence as to lost profits, we will review this argument in relation to unjust enrichment.

{¶ 54} The Ohio Uniform Trade Secret Act, R.C. 1333.61(D), defines a "trade secret" as follows:

"Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{¶ 55} R.C. 1333.61(B) defines "misappropriation" as any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a) Used improper means to acquire knowledge of the trade secret;

(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

{¶ 56} In *State ex rel. Plain Dealer v. Ohio Department of Insurance,* 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello,* 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588, 592 (8th Dist.1983), the Supreme Court of Ohio set forth what a trial court must consider when analyzing a trade secret claim:

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

{¶ 57} Greene admitted he was aware that "customer lists, telemarketing information, pricing, contact expiration, information, et cetera" was considered by MT to be trade secrets, confidential, and was to be protected at all times. T. at 229-230. Greene agreed MT owned the information regarding the sales he had made. T. at 245. He agreed he shared comparative pricing information, service rates, and color base pricing with MOM. T. at 252-255. He also shared three customer names outside of Licking County with MOM and discussed trying to convert them from MT to MOM. T. at 255-256. Prior to leaving MT, Greene backed-up all of his contacts on his phone in anticipation of leaving MT. T. at 268-269. His contacts included MT's customer names and phone numbers. T.

at 270-271. He then emailed the list from his work email address to his personal email address. T. at 270-272; Plaintiff's Exhibits 12-15. He was aware that once he left MT's employ, MT would have remotely wiped his contact list from his phone. T. at 269. He did not have permission from MT to back-up the contact information. T. at 269. He also emailed to his personal email address an analysis prepared by MT of his historical sales figures. T. at 277; Plaintiff's Exhibit 18. The historical sales figures contained detailed information on Greene's customer accounts. T. at 280-281. Greene agreed the exhibit contained confidential information, and he did not ask for permission to send the information to his personal email address. T. at 282. He did not have any reason to believe that MOM had any of the information contained in the exhibit at the time that he left MT's employ. T. at 283. Greene admitted that he emailed himself the information to provide proof of his sales to MOM. T. at 286. Prior to leaving MT, Greene emailed to his personal email address three proposals he had prepared on behalf of MT for customers that he contacted after he moved to MOM. T. at 304-314; Plaintiff's Exhibits 21, 22, 23, 24, 25. Greene admitted that he retained confidential information from MT despite representing in his employment agreement with MOM that he had not. T. at 319. He acknowledged that he wanted to maximize the number of customers that he could move from MT to MOM. T. at 320. He admitted he was working on those efforts to move customers before he was an official employee of MOM. T. at 320-321. Mr. Rounds testified MT's employment agreements and employee handbook expressly discussed the handling of confidential information. T. at 435-440; Plaintiff's Exhibits 1, 2, 29. MT specifically trained its employees that company information was confidential and was not to end up in "anyone's hands outside the company." T. at 436. MT went to great lengths

to make sure everything was secure and the computers had sign-in IDs. *Id.* He stated the information contained in Plaintiff's Exhibit 18 contained confidential information that would absolutely give a competitor an advantage in the marketplace. T. at 433-435.

{¶ 58} We find the record contains sufficient evidence, if believed by the jury, to support a finding of trade secret misappropriation and that the misappropriation was willful and malicious. Interrogatory No. 3.

{¶ 59} As instructed by the trial court, cited above in ¶ 45, unjust enrichment is the value to Greene of the trade secret resulting from the misappropriation. The jury could consider the value of customer relationships or contracts realized by Greene as a result of the misappropriation. The jury had before it Defendant's Exhibit C which contained various contracts and invoices of Greene's customers while he was employed with MT, Plaintiff's Exhibit 37 which was the list of customers that moved from MT to MOM, and Plaintiff's Exhibits 18 which was the spreadsheet containing data regarding Greene's historical sales during his employ with MT. We find the record contains sufficient evidence to support the jury's determination on the value to Greene of the trade secrets he misappropriated. There was ample evidence to support an award under the theory of unjust enrichment.

{¶ 60} Upon review, we find the trial court did not abuse its discretion in denying the motion for new trial on the trade secret misappropriation claim. The compensatory damages awarded against Greene for said claim ($150,000) and the punitive damages award ($40,000) stand.

{¶ 61} Assignment of Error II is denied.

III

{¶ 62} In their third assignment of error, appellants claim the trial court erred in denying their motion for summary judgment on appellee's claims for breach of contract, unfair competition, and tortious interference with a contract. Based upon our decision in Assignment of Error I, we find this assignment to be moot.

IV

{¶ 63} In their fourth assignment of error, appellants claim the trial court abused its discretion in permitting evidence of a prior lawsuit filed against Greene by Xerox Corporation after he stopped working as an independent agent for Xerox. We disagree.

{¶ 64} The admission or exclusion of relevant evidence lies in a trial court's sound discretion. *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528; *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). As previously stated, in order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 65} Prior to working for MT, Greene was an independent agent selling copiers made by Xerox. After Greene terminated that business relationship and started working for MT, Xerox filed a lawsuit against Greene and MT, alleging various claims including breach of contract, misappropriation of trade secrets, and taking "tally sheets" which is the list of sales made by Greene. T. at 334, 337. In the case sub judice, MT was permitted to cross-exam Greene, over objection, about this prior lawsuit, and admit into evidence Plaintiff's Exhibit 36, a "Final Judgment of Permanent Injunction and Other Relief" entered in the Xerox case as part of the parties' settlement agreement. In the settlement

agreement, Greene was "enjoined from competing for new business for any person, business or entity that currently has one or more items of Xerox brand equipment located in Licking County, Ohio for a period of one year." T. at 338. Greene agreed he was so enjoined. T. at 339. Said exhibit indicated that Greene and MT were "jointly and severally liable to Xerox for $150,000." T. at 339. The trial court cautioned the jury on the significance of a settlement agreement, both before and after the evidence was presented. T. at 329-330, 339-340.

{¶ 66} Appellants argue the evidence was inadmissible under Evid.R. 403 and 404. Evid.R. 403(A) states relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 404(A) states, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," and Evid.R. 404(B) states, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B) goes on to state: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Appellants argue the evidence was highly prejudicial, and was offered to show action in conformity therewith i.e., "pattern and practice."

{¶ 67} In permitting the complained of evidence, the trial court ruled as follows (T. at 287 and 289-290, respectively):

I would note that based on some of the testimony of Defendant Greene with regards to whether or not something is confidential information or whether he believed paragraph two, addendum three was applicable, I'm going to find there's a stronger nexus with absence of mistake and knowledge. So, if you move to admit it, the odds are that's what I'm doing.

\* \* \*

When Mr. Greene was indicating certain things about confidential information saying I didn't believe that was confidential, I didn't believe, I think there's reference in the judgment entry about confidential information and there's enough there that I find that the nexus that the Plaintiff was arguing about is less tenuous, and my concerns about any prejudice overweighing the probative value is not outweighed by the prejudice. Okay. And I will give that curative instruction.

{¶ 68} We concur with the trial court's reasoning. Greene was cross-examined as to the confidential nature of certain company documents, to which Greene testified he did not believe the documents to be confidential. T. at 242-245, 252-255, 269, 279-283, 285-286. In wanting to present the evidence of the prior Xerox lawsuit, MT did more than argue "pattern and practice" as argued by appellants in their appellate brief at 25. MT also argued motive, intent, preparation, absence of mistake or accident, and knowledge. T. at 23-24. MT wanted to challenge Greene's reasons for emailing himself certain company information by arguing his actions were planned, were not a mistake, and he knew what he was doing. In addition, the trial court twice issued a limiting instruction on the jury's use of the evidence.

{¶ 69} Upon review, we find the trial court did not abuse its discretion in permitting evidence of the prior lawsuit.

{¶ 70} Assignment of Error IV is denied.

V

{¶ 71} In their fifth assignment of error, appellants claim the trial court abused its discretion in granting appellee attorney fees. Given our decision in Assignment of Error I, we agree in part.

{¶ 72} We review a trial court's decision regarding an award of attorney fees for abuse of discretion. *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991); *Blakemore, supra.*

{¶ 73} In its July 5, 2018 judgment entry, the trial court assessed attorney fees against both Greene and MOM, mitigating the award "by the degree of success, or lack therefore, of the Plaintiff on his claims." The trial court found appellee was responsible for 42% of the attorney fees found to be reasonable in the case and appellants were responsible for the remaining 58%.

{¶ 74} Appellants first argue the trial court abused its discretion in awarding attorney fees under R.C. 1333.64(C) because MT was not entitled to punitive damages. We disagree as we have found punitive damages against Greene to be appropriate.

{¶ 75} Appellants next argue the trial court abused its discretion in awarding attorney fees with respect to MOM under R.C. 1333.64(C) because the jury found MOM did not misappropriate trade secrets. A review of the trial court's decision indicates the trial court awarded attorney fees against MOM based on the jury's finding that MOM "acted with malice; acted with aggravated or egregious fraud; or knowingly authorized,

participated in, or ratified as principal or master, the actions or omissions of an agent or servant that demonstrates malice." Interrogatory No. 11. This finding referenced the jury's findings that MOM tortiously interfered with the contract and engaged in unfair competition. Interrogatory Nos. 8 and 9. Given our decision in reversing the compensatory damages award against MOM on these two claims and the attendant punitive damages award, we find any attorney fees awarded against MOM are no longer warranted.

{¶ 76} Appellants lastly argue the trial court abused its discretion in awarding attorney fees without limiting the fees to the misappropriation claim against Greene. Given that the judgment on the misappropriation claim is the only one remaining, along with the attendant punitive damages award, we find the attorney fee award should be recalculated to reflect this court's decision.

{¶ 77} Attorney fees assessed against MOM are stricken. The attorney fees awarded against Greene are reversed and the matter is remanded to the trial court for recalculation consistent with this opinion.

{¶ 78} Assignment of Error V is granted in part and denied in part.

VI

{¶ 79} In their sixth assignment of error, appellants claim the trial court abused its discretion in granting MT injunctive relief. We disagree.

{¶ 80} At the outset, we note the trial court granted MT a limited injunction of five years, not a permanent injunction as argued by appellants. Whether to grant an injunction rests in the trial court's sound discretion. *Perkins v. Quaker City,* 165 Ohio St. 120, 133 N.E.2d 595 (1956); *Blakemore, supra.*

{¶ 81} R.C. 1333.62 governs injunctions under the Uniform Trade Secrets Act and states the following:

> (A) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, unless the court finds that termination of the injunction is likely to provide a person who committed an actual or threatened misappropriation with a resulting commercial advantage, in which case the injunction shall be continued for an additional reasonable time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

{¶ 82} In its July 5, 2018 judgment entry granting MT a limited injunction, the trial court found the following:

> In the instant matter, we are dealing with a former employee (Greene) with comprehensive knowledge of an employer's trade secrets and confidential information that has not only begun employment with a competitor, but has also been found by a jury to have used those trade secrets and confidential information in an improper fashion. Further, there was evidence that the new employer (Modern Office Methods, Inc.) benefited from the conduct of their new employee (Greene) in using such

information and was either aware of such conduct or was intentionally ignorant of the same.

{¶ 83} The trial court noted that although MOM was found not to have misappropriated trade secrets, actual or threatened misappropriation may be enjoined. The trial court determined given the actions of appellants and the nature of their relationship, MT's concern that MOM will engage in misappropriation of trade secrets is justified. The trial court found "[m]uch of the confidential information sought to be protected may at some point become legitimately public information" and therefore a permanent injunction "would be both excessively broad and unnecessary."

{¶ 84} We concur with the trial court's decision. The jury found Greene misappropriated trade secrets. He had in his possession confidential information regarding MT's customers and their respective sales contracts and leases and service agreements. Greene's position with MOM was in direct competition with MT. Under these circumstances, Greene's use of MT's information and trade secrets was a very real threat.

{¶ 85} Appellants argue the information sought to be protected no longer constituted trade secrets because MT publicly filed the information with the trial court. The trial court addressed this issue, noting it had previously issued a stipulated protective order on November 20, 2017, and an order and entry on January 29, 2018. The information sought to be protected was marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" consistent with the instructions contained in the protective order. Further, in its July 5, 2018 judgment entry, the trial court ordered the sealing of the information sought to be protected.

{¶ 86} Upon review, we find the trial court did not abuse its discretion in granting MT a limited injunction.

{¶ 87} Assignment of Error VI is denied.

CROSS-ASSIGNMENT OF ERROR I

{¶ 88} In its first cross-assignment of error, MT claims the trial court abused its discretion in denying its request for exemplary damages. We disagree.

{¶ 89} Pursuant to R.C. 1333.63(B), if willful and malicious misappropriation exists, a trial court "may award punitive or exemplary damages in an amount not exceeding three times any award made" for actual damages and unjust enrichment.

{¶ 90} Whether to award exemplary damages rests in the trial court's sound discretion. *Baker Equipment, Inc. v. Flynn,* 12th Dist. Butler No. CA2002-12-313, 2004-Ohio-1190; *Blakemore, supra.*

{¶ 91} As discussed above, the jury found willful and malicious misappropriation by Greene, and awarded MT $150,000 in compensatory damages. Interrogatory No. 3. In a separate punitive damages verdict form, the jury awarded MT $40,000 as against Greene. The record does not contain an interrogatory as to which specific claim(s) the punitive damages award attaches to.

{¶ 92} In its July 5, 2018 judgment entry denying the request for exemplary damages, the trial court stated the following:

> While the Court found that limited attorney fees were appropriate based on the willful and malicious misappropriation of trade secrets pursuant to R.C. 1333.64(C), and further finds that the misappropriation was

willful and malicious for purposes of considering exemplary damages pursuant to R.C. 1333.63(B), it does not believe an award is appropriate in this case.

The Jury has already awarded punitive damages to the Plaintiff based in part on the conduct of the Defendant in the willful and malicious misappropriation of trade secrets. * * * To permit a second award of punitive or exemplary damages would have the effect of punishing the Defendant twice for the same conduct.  While the Court does not state that a trier of fact is prohibited from awarding exemplary damages when punitive damages have been awarded by a jury for similar conduct, it does believe that an award of punitive damages for same or similar conduct can be considered when determining whether such an award is appropriate under the statute.

{¶ 93} In considering the reprehensibility of Greene's conduct "with regards to the appropriateness of punitive damages" and considering the evidence presented at trial and the jury's imposition of punitive damages, the trial court found an additional award of exemplary damages would be inappropriate.

{¶ 94} MT argues the punitive damages award relates only to the jury finding of unfair competition (Interrogatory No. 10), and the trade secret misappropriation claim was separate and distinct from the punitive damages award.  We disagree.  A review of the jury instructions indicates the trial court instructed the jury on punitive damages as follows in relevant part (T. at 813):

1. GENERAL. If you find that MT is entitled to compensatory damages against Greene and/or MOM on MT's claim(s) for (Breach of Duty of Good Faith and Loyalty (against Greene) / Trade Secret Misappropriation (against Greene and MOM) / Conversion (against Greene and MOM) / Unfair Competition (against Greene and MOM) / Tortious Interference with Contract (against MOM), you may now consider whether you will separately award punitive damages related to (those / that) (claims / claim).

{¶ 95} The punitive damages instruction included the misappropriation claim. This instruction was identical to the instruction MT requested in its proposed jury instructions filed March 29, 2018.

{¶ 96} The trial court went on to instruct the jury members if they were to find that Greene or MOM acted with fraud or malice, they could then award punitive damages to punish the offending party and to make the offending party examples to discourage others from similar conduct. T. at 813-815. The trial court instructed the jury members on the elements to consider in their determination on punitive damages. *Id.*

{¶ 97} The jury found against Greene on MT's claims for unfair competition and trade secret misappropriation. Interrogatory Nos. 3 and 5. The jury found Greene acted with malice or fraud under the unfair competition claim and acted willfully and maliciously under the misappropriation claim. Interrogatory Nos. 3 and 10. Without a specific interrogatory relating to the punitive damages award, it is impossible to determine the jury's intention regarding the award: did it attach to the unfair competition claim, the

misappropriation claim, or split between both?   Regardless, the parties agreed to have the jury determine a punitive damages award, and the jury did so.  The jury considered Greene's conduct and the damages sustained by MT, and awarded MT punitive damages of a little over ten percent ($40,000) of the total compensatory award against Greene ($375,000).  The trial court considered the jury's decision, Greene's conduct, and the evidence presented, and declined to award anything additional.

{¶ 98} Upon review, we find the trial court did not abuse its discretion in denying MT's request for exemplary damages.

{¶ 99} Cross-Assignment of Error I is denied.

### CROSS-ASSIGNMENT OF ERROR II

{¶ 100}  In its second cross-assignment of error, MT claims the trial court abused its discretion in denying its request for prejudgment interest.  We disagree.

{¶ 101}  Whether to award prejudgment interest rests in the trial court's sound discretion.  *Kalain v. Smith,* 25 Ohio St.3d 157, 495 N.E.2d 572 (1986); *Blakemore, supra.*

{¶ 102}  R.C. 1343.03 governs rate of interest on judgments.   Subsection (C) provides for the payment of interest on a judgment if:

> upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make

a good faith effort to settle the case and that the party to whom the money

is to be paid did not fail to make a good faith effort to settle the case.

{¶ 103} The party requesting the prejudgment interest bears the burden of

demonstrating that the other party failed to make a good faith effort to settle the case.

*Broadstone v. Quillen,* 162 Ohio App.3d 632, 2005-Ohio-4278, 834 N.E.2d 424, ¶ 27 (10th

Dist.), citing *Loder v. Burger,* 113 Ohio App.3d 669, 674, 681 N.E.2d 1357 (11th

Dist.1996).

{¶ 104} In *Kalain, supra,* at syllabus, the Supreme Court of Ohio explained the

following:

A party has not "failed to make a good faith effort to settle" under

R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2)

rationally evaluated his risks and potential liability, (3) not attempted to

unnecessarily delay any of the proceedings, and (4) made a good faith

monetary settlement offer or responded in good faith to an offer from the

other party. If a party has a good faith, objectively reasonable belief that he

has no liability, he need not make a monetary settlement offer.

{¶ 105} In its July 5, 2018 judgment entry denying the request for prejudgment

interest, the trial court found appellants failed to fully cooperate with discovery, all parties

failed to evaluate the risks and potential liabilities of their respective case, none of the

parties attempted to delay the proceedings, and none of the parties made a good faith

reasonable settlement offer.  Based upon the filings in the record pertaining to settlement negotiations, we concur with the trial court's analysis under each category.

{¶ 106}  Upon review, we find the trial court did not abuse its discretion in denying MT's request for prejudgment interest.

{¶ 107}  Cross-Assignment of Error II is denied.

CROSS-ASSIGNMENT OF ERROR III

{¶ 108}  In its third cross-assignment of error, MT claims the trial court abused its discretion in denying in part its request for attorney fees.

{¶ 109}  Given our decision in Assignment of Error V to strike the attorney fees assessed against MOM, we will review this cross-assignment as it pertains to Greene only.

{¶ 110}  As stated in Assignment of Error V, we review a trial court's decision regarding an award of attorney fees for abuse of discretion.  *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991); *Blakemore, supra.*

{¶ 111}  In determining the amount of reasonable attorney fees, a trial court should first calculate the "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Bittner, supra.*  After arriving at the lodestar figure, a trial court may modify the amount based on the factors listed in Prof.Cond.R. 1.5 which governs fees and expenses.  Subsection (a) lists the following factors to be considered in determining the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer performing the services;

(8) whether the fee is fixed or contingent.

{¶ 112}   In its May 15, 2018 motion for attorney fees, MT requested $226,228 for attorney fees.  MT presented the affidavits of trial counsel as well as detailed time entries billed and expert opinion that the number of hours expended and the rates charged were reasonable (Jackson Affidavit).  In response, appellants argued any attorney fees award should be limited to fees incurred with respect to the misappropriation claim.  Appellants did not contest the hourly rates.

{¶ 113}   In its July 5, 2018 judgment entry, the trial court granted attorney fees to MT, but lowered the amount to $155,945, finding the following:

The hourly rates for some of the legal services incurred by the Plaintiff are far in excess of those customarily charged in this county for similar legal services relative to both the hourly rate of the individual attorneys involved and the number of hours spent on the matter. And while Ohio law allows that when a firm involved has a statewide practice, its rates may be based upon its statewide rates, the Court is not required to award fees that are far in excess of the customary rate for similar work.

For the most part, based on the facts of this case and the complex protracted and contentious litigation involved, and considering the factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct, the Court finds the request for the attorney fees sought by the Plaintiff to be appropriate. However, not in the amount requested. In the Court's view, the hourly rate at which the Plaintiff's attorneys billed for their time was excessive compared to the fees customarily charged locally. Further, while this was not a simple case it was also not so complicated or technically difficult as to justify the rates suggested by the Plaintiff.

{¶ 114} MT first argues the trial court abused its discretion in reducing each of its attorney's hourly rates.

{¶ 115} Pursuant to Prof.Cond.R. 1.5(a)(3), the trial court was permitted to consider "the fee customarily charged in the locality for similar legal services" and as stated above, the trial court's determination is reviewed under an abuse of discretion

standard. "The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.,* 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).

{¶ 116} Upon review, we cannot say the trial court abused its discretion in lowering the hourly rates.

{¶ 117} MT also argues the trial court abused its discretion in proportionately awarding attorney fees to the number of successful claims.

{¶ 118} Although the trial court recognized that "a court should not reduce attorney fees based on a simple ratio of successful claims raised," the trial court stated it carefully considered the matter and found such a division to be appropriate. The trial court considered determining the amount of fees associated with the individual claims proven by appellants, but found it "proved to be administratively impractical such that the Court finds the proportional division is appropriate." July 5, 2018 Judgment Entry at fn. 11. In determining this issue, the trial court incorporated by reference the following factors it considered in determining costs:

> Dividing the costs as noted above might appear to be nothing more than a formulaic division based on the interrogatories. However, the Court has carefully reviewed the facts of this case, the interrogatories from the jury and all of the evidence presented during the trial and finds that this percentage of division is appropriate. The Court acknowledges that some

of the claims brought arguably involved core facts or were based on similar legal theories and considered this fact when reaching the above division. Further, the Court considered the motions filed in this case, the handling of discovery, the claims brought by the Plaintiff and the manner in which this case was prosecuted.

{¶ 119} Upon review, we cannot say the trial court abused its discretion in proportionately awarding attorney fees.

{¶ 120} Upon review, we find the trial court did not abuse its discretion in denying in part MT's request for attorney fees, subject to this court's directive in Assignment of Error V.

{¶ 121} Cross-Assignment of Error III is denied.

CROSS-ASSIGNMENT OF ERROR IV

{¶ 122} In its fourth cross-assignment of error, MT claims the trial court abused its discretion in denying in part its request for costs. We disagree.

{¶ 123} We review a trial court's decision regarding the assessment of costs for abuse of discretion. *Taylor v. McCullough Hyde Memorial Hospital,* 116 Ohio App.3d 595, 688 N.E.2d 1078 (12th Dist.1996); *Blakemore, supra.*

{¶ 124} Civ.R. 54(D) governs "costs" and states: "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." "Denying costs to both parties can be appropriate when neither party entirely prevails." *State ex rel. Reyna v. Natalucci-Persichetti,* 83 Ohio St.3d 194, 198, 699 N.E.2d 76 (1998).

{¶ 125} In assessing court costs, the trial court used the same proportionality approach as in determining attorney fees, considering the factors cited in Cross-Assignment of Error III.  As in that assignment of error, we do not find the trial court abused its discretion in utilizing such an approach.  However, as we found in Assignment of Error V, given that the judgment on the misappropriation claim is the only one remaining, along with the attendant punitive damages award, we find the assessment of costs should be recalculated to reflect this court's decision.

{¶ 126}  Cross-Assignment of Error IV is granted in part and denied in part.

{¶ 127}  The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed in part and reversed in part.  The matter is remanded to said court in light of this court's opinion to recalculate the attorney fee award and costs and to enter final judgment accordingly.

By Wise, Earle, J.

Hoffman, P.J. and

Delaney, J. concur.

EEW/db